## CLARA BELLE CALDWELL v. TRAVELERS IN-SURANCE COMPANY, Appellant.

### In Banc, December 18, 1924.

1. **ACCIDENT INSURANCE: Meaning of Accidental Means: Intentional Act: Unforeseen Result.** The word "means" means cause, and accidental result is not equivalent to accidental cause. If in order to recover on an accident insurance policy the beneficiary must show that the insured's death resulted from "accidental means" she must show that the means which produced the injury or death was accidental, and not simply that the result was unforeseen and unexpected. The rule announced by the St. Louis and the Kansas City Court of Appeals in certain cases that where injury or death is the unusual, unexpected or unforeseen result of an intentional act, such injury or death is by accidental means, even though there is no proof of mishap or slip in the act or event which caused it, is not correct. The true rule is that, where an unusual or unexpected result occurs by reason of the doing by the insured of an intentional act, where no mischance, mishap or slip occurred in the doing of the act itself, the ensuing injury or death is not caused through accidental means; it must be made to appear that the means used to produce the injury was accidental, and it is not enough that the result may be unusual, unexpected or unforeseen. [Authorities of this and other jurisdictions reviewed at length.]

2. ———: ———: **Operation for Hernia: Subsequent Obstruction of Bowel.** The insured was operated upon for two hernias, and the petition alleges and the proof shows that the operation was skillfully performed. There was no evidence of mischance, slip or mishap, or of any unexpected, unusual or unforeseen occurrence, during its performance. Nothwithstanding the highest skill and care in performing it, an obstruction of the bowel occurred, which concededly caused insured's death five days later, and after a second operation had been performed in a futile effort to save his life. *Held*, that, assuming that the obstruction of the bowel and his ensuing death were the unusual and unexpected result of the operation skillfully and (at insured's request) intentionally done, his death was not the result of accidental means, and the judgment for the beneficiary must be reversed. To recover it was necessary to show that something unforeseen, unusual, unexpected or unintentional occurred during the operation intentionally performed; it was not enough that the obstruction of the bowel, which caused insured's death, was not foreseen or expected, for that did not result from accident, but followed an intentional operation.

Caldwell v. Travelers Insurance Co.

3. ———: **Operation: At Request of Insured: His Intentional Act.** What the surgeon does in performing an operation at the request and under the employment of insured is the act of the insured, just as much as if the insured performs it with his own hands.

4. **COMPELLED ELECTION: Inconsistent Counts: Review on Defendant's Appeal.** The action of the trial court in compelling plaintiff to elect between two counts of her petition and two others, on the ground that the first two were inconsistent with the other two, cannot be reviewed on defendant's appeal alone, after verdict and judgment on the remaining two counts, where plaintiff did not also appeal, although plaintiff's exceptions to the court's ruling were duly saved by a term bill of exceptions.

Citations Pertaining to Subjects of Headnotes: 1, **Accidental,** 1, C. J. p. 396; Accident Insurance, 1 C. J. par. 72; Appeal and Error, 4 C. J. pars. 2588, 2592; Means. 26 Cyc. 1607. Headnotes 2 and 3: Accident Insurance. 1 C. J. pars. 72, 73.

Appeal from St. Louis City Circuit Court.—*Hon. Victor H. Falkenhainer,* Judge.

REVERSED:

*Jones, Hocker, Sullivan & Angert* for appellant.

(1) The direct, though unusual, result of a surgical operation is not accidental means. 1 C. J. p. 430; Ramsey v. Casualty Co., 13 Am. L. Rep. (Tenn.) 651; Ins. Co. v. Brand, 13 Am. L. Rep. 657; Kindall v. Protective Assn., 169 Pac. (Ore.) 752; Herdic v. Maryland Casualty Co., 146 Fed. 396, 149 Fed. 199; Carnes v. Traveling Men's Assn., 106 Iowa, 231; Lovelace v. Protective Assn., 126 Mo. 106; Stokeley v. Fidelity & Cas. Co., 193 Ala. 90; Southard v. Ry. Ins. Co., 34 Conn. 574; Rock v. Travelers Ins. Co., 156 Pac. (Cal.) 1029; Bennetts v. Occidental Life, 178 Pac. (Cal.) 964; Olinsky v. Ry. Mail Assn., 189 Pac. (Cal.) 835; Cobb v. Preferred Acc. Assn., 96 Ga. 818; Schmid v. Travelers Acc. Assn., 42 Ind. App. 483; Husbands v. Travelers Ins. Co., 133 N. E. (Ind.) 130; Carnes v. Iowa Traveling Men's Assn., 106 Iowa, 281; Feder v. Traveling Men's Assn., 107

Iowa, 538; Smouse v. Traveling Men's Assn., 118 Iowa, 436; Lehman v. Great Western Acc. Assn., 153 Iowa, 118; Lickleider v. Traveling Men's Assn., 151 N. W. (Iowa) 479; Salinger v. Fidelity & Casualty Co., 178 Ky. 369; U. S. Cas. Co. v. Malone, 87 So. (Miss.) 896; Tuttle v. Pacific Ins. Co., 190 Pac. (Mont.) 993; Fane v. National Assn. of Ry. Mail Clerks, 188 N. Y. Supp. 222; Appel v. Aetna Life Ins. Co., 83 N. Y, Supp. 238, affirmed 180 N. Y. 514; Niskern v. United Brotherhood, 87 N. Y. Supp. 640, 93 App. Div. 364; Barnstead v. Travelers Assn., 240 App. Div. 473, 198 N. Y. Supp. 416; New Amsterdam Cas. Co. v. Johnson, 91 Ohio, 155; Pledger v. Business Men's Acc. Assn., 197 S. W. (Tex.) 889; Westmoreland v. Preferred Acc. Ins. Co., 75 Fed. 244; Travelers Ins. Co. v. Selden, 78 Fed. 285; Shanberg v. Fidelity & Casualty Co., 158 Fed. 1 (C. C. A.); Hastings v. Travelers Ins. Co., 190 Fed. 258; Whitehead v. Ry. Mail Assn., 269 Fed. 25 (C. C. A.); Scarr v. General Acc. Assur. Co., 1 Kings Bench, 387; Clidero v. Scottish Acc. Ins. Co., 29 Scot. L. R. 303.    (2)  The plaintiff's case, even on her own theory of the law, requires the mounting of inference on inference in a manner which may not be done.  Griffith v. Casualty Co., 290 Mo. 462; Phillips v. Insurance Co., 288 Mo. 183.

*James J. O'Donohoe* for respondent.

(1)  The insured died by accidental means, within the meaning of the policy.  Eicks v. Fidelity & Cas. Co., 253 S. W. (Mo.) 1029; Dezelle v. Fidelity & Cas. Co., 176 Mo. 253; Lovelace v. Travelers P. Assn., 126 Mo. 104; Bellows v. Travelers Ins. Co., 203 S. W. (Mo.) 978; Berryman v. Southern Surety Co., 285 Mo. 379; Fetter v. Fid. & Cas. Co., 174 Mo. 256; Young v. Ry. Mail Assn., 126 Mo. App. 325; Beile v. Travelers Prot. Assn., 155 Mo. App. 629; Merrick v. Travelers Ins. Co., 189 S. W. (Mo. App.) 392; Sommers v. Ins. Assn., 84 Mo. App. 605; Hooper v. Standard L. & A. Ins. Co., 166 Mo. App.

209; Anderson v. Mutual Benefit, 231 S. W. (Mo.) App.) 75; Andrus v. Bus. Men's Acc. Assn., 283 Mo. 442; Goodes v. Order United Com. Travelers, 174 Mo. App. 330; Driskell v. U. S. H. & Acc. Ins. Co., 117 Mo. App. 363; Columbia Paper Stock Co. v. Fidelity & Cas. Co., 104 Mo. App. 157; Johnson v. Continental Cas. Co., 122 Mo. App. 369; Greenlee v. K. C. Cas. Co., 192 Mo. App. 303; Rowe v. U. S. C. T. Assn., 186 Iowa, 454; Higgins v. Midland Cas. Co., 281 Ill. 431; Hood & Son v. Maryland Cas. Co., 206 Mass. 223; Johnson v. F. & G. Co., 184 Mich. 406; U. S. Cas. Co. v. Griffis, 186 Ind. 126; Freeman v. Mercantile Mutual A. Assn., 156 Mass. 35; Travelers Ins. Co. v. Melick, 65 Fed. 178; Atlanta Accident Assn. v. Alexander, 104 Ga. 709; Ludwig v. Preferred Accident Ins. Co., 113 Minn. 510; Budde v. National Travelers' Assn., 184 Iowa, 1219; Frommelt v. Travelers Ins. Co., 150 Minn. 66; Higgins v. Casualty Co., 186 Iowa, 454; Elsey v. F. & C. Co., 187 Ind. 447; Business Men's Acc. Assn. v. Schiefelbusch, 262 Fed. 354; 4 Cooley's Briefs on Law of Insurance, 156-157; 1 C. J. pp. 427 et seq. and notes; Joyce on Insurance, secs. 2864-66; L. R. A. 1916 A, p. 475; L. R. A. 1917 F, p. 481; L. R. A. 1917 A, p. 1050; Townsend v. Com. Trav. Mut. Acc. Co., 231 N. Y. 148; Lewis v. Ocean Acc. & G. Co., 244 N. Y. 18; Int. St. Bus. Men's Assn. v. Lewis, 257 Fed. 251; Miller v. Fidelity & Cas. Co., 97 Fed. 836; Hornby v. State Life, 184 N. W. (Neb.) 84; Interstate Business Men's Assn. v. Lester, 257 Fed. 225, *certiorari* denied in 250 U. S. 662; State Life Ins. Co. v. Allison, 269 Fed. 93; Great Southern Ins. Co. v. Churchwell, 216 Pac. (Okla.) 676; Aetna Life v. Brand, 265 Fed. 6; Richards on Insurance, sec. 385; 1 Words and Phrases, pp. 62 et seq.; 1 Words and Phrases (2 Series) pp. 31 et seq.

DAVID E. BLAIR, J. —This is an action upon two policies of accident insurance issued to Joseph S. Caldwell as the insured and payable in case of his death to his wife, Clara Belle Caldwell, as beneficiary. The

petition was drawn in four counts. The first and second counts were based upon one policy and the third and fourth counts were based upon the other policy. The trial court required plaintiff to elect upon which count she would proceed, and she involuntarily elected to proceed to trial upon the second and fourth counts of the petition. The answer to said counts was a general denial. Trial by jury resulted in a verdict for plaintiff upon the second count for $4032.50, and upon the fourth count for $6065. After unsuccessfully moving for a new trial, defendant appealed to this court.

No complaint is made of the sufficiency of the second and fourth counts of the petition, hence it is unnecessary to notice the same further than to say that the second count alleged the issuance of a policy of accident insurance to the insured, whereby defendant insured the life of plaintiff's husband in her favor for the principal sum of $2500 with accrued accumulations of one-half of that sum, making $3750 altogether, against death, "from bodily injuries, effected directly and independently of all other causes, through external, violent and accidental means alone within ninety days from date of said accident; or, if injuries sustained in manner and form as aforesaid shall, independently and exclusively of all other causes, immediately, wholly and continuously disable and prevent Joseph S Caldwell, the insured, from performing any and every kind of duty pertaining to his occupation, and during the period of such continuous disability and within two hundred weeks from the date of accident shall result in the death of Joseph S. Caldwell, to pay to Clara Belle Caldwell, plaintiff herein said principal sum of two thousand five hundred dollars, together with the further sum as accumulations hereinafter stated."

It is then alleged: "That on or about the 6th day of November, 1920, at Bethesda Hospital, in the City of St. Louis, State of Missouri, said Joseph S. Caldwell, the insured, was operated on for abdominal inguinal

and umbilical ruptures or hernias, and in the operation accidental and unavoidable injuries were inflicted upon the abdominal organs, including the omentum, peritoneum, blood vessels, arteries and intestines, consisting of such lacerations, cutting and tearing of said organs as is the usual result of an operation for ruptures or hernias in the usual and customary manner by a skilled surgeon, such lacerations, cutting and tearing usually being followed by no ill results, but plaintiff avers that accidental thrombosis and accidental intestinal obstruction followed from the operation and injuries aforesaid, and as a direct result thereof the said Joseph S. Caldwell, the insured, died on or about the 11th day of November, 1920, and within ninety days from date of accident.

"And plaintiff further avers that the injuries aforesaid, independently and exclusively of all other causes, immediately, wholly and continuously disabled and prevented Joseph S. Caldwell, the insured, from performing any and every kind of duty pertaining to his occupation from the date of accident, namely, the 6th day of November, 1920, to the date of his death, namely, the 11th day of November, 1920."

It is then alleged that plaintiff was the wife and is now the widow of insured and that all conditions of the policy, including the payment of premiums thereon, were complied with; that plaintiff demanded payment and that defendant vexatiously refused to pay the amount due.

The allegations of the fourth count were substantially the same as those of the second count, except that the policy therein sued on was originally issued for $5000 and that accrued accumulations amounted to $7500 at the death of the insured.

The evidence offered by plaintiff tended to show that on November 6, 1920, the insured was operated upon for two hernias. Not only does the evidence show, but the petition alleges, that the operation was skillfully performed. There is no evidence of any mischance, slip

or mishap, nor of any unexpected, unusual or unforeseen occurrence during the performance of said operation. The operating surgeon testified that he could not do it any better if he should do it over, and that he did not think any one else could do it any better. No more injury by way of cutting or laceration was caused than was actually necessary in the performance of the operation. The operation was performed at the request of the insured.

Notwithstanding the uncontradicted evidence of the exercise of the highest skill and care in performing the operation, an obstruction of the bowel occurred, which concededly caused insured's death five days later, and after a second operation had been performed in a futile effort to save his life. It is not here necessary to detail the evidence which plaintiff claims tended to show that insured came to his death as the result of the first operation to relieve the hernias. Assuming, for the purpose of the point now to be discussed, that the obstruction of the bowel and ensuing death were the unusual and unexpected results of the operation thus skillfully performed, can plaintiff recover under the terms of the contract of the accident insurance policies here involved?

Before plaintiff can recover she must offer substantial evidence tending to show that her husband's death resulted "from bodily injuries . . . through external, violent and accidental means." No question is raised as to the external and violent means. The sole question is what is meant by "accidental means."

It cannot be doubted that what the surgeon did in performing the operation at the request and under the employment of insured was the act of insured, just as much as if insured had performed the operation with his own hands. This is true under the rule that what one does through another, he does himself.

There are two clearly defined lines of cases on this question. One holds that, where an unusual or unex-

305 Mo.—40.

pected result occurs by reason of the doing by insured of an intentional act, where no mischance, slip or mishap occurs in doing the act itself, the ensuing injury or death is not caused through accidental means; that it must appear that the means used was accidental, and it is not enough that the result may be unusual, unexpected or unforeseen.

The other line of cases holds that where injury or death is the unusual, unexpected or unforeseen result of an intentional act, such injury or death is by accidental means, even though there is no proof of mishap, mischance, slip or anything out of the ordinary in the act or event which caused such injury or death.

Industrious counsel have cited an imposing array of cases from this and other jurisdictions. In the number of cases cited respondent has far outdone the appellant. By actual count her counsel has cited 116 cases and textwriters to this point alone. Such a formidable array has challenged the interest and industry of the writer to undertake the laborious, although not entirely unpleasant, task of examining every case cited. The great majority of those cases are found not to be in point on the question before us.

The Missouri decisions which have discussed the question have followed the second line of cases, that, where the injury is the unexpected result of an intentional act, such injury should be considered as occurring through accidental means. All of such cases, which may be said to have squarely decided the question, have been decided by the Kansas City and the St. Louis Courts of Appeals. Appellant contends that these cases are opposed to the great weight of the best considered cases outside of Missouri, and asks that this court examine the question for itself and declare the law of Missouri upon the subject. I have spent a great deal of time and labor in studying the cases from this and other jurisdictions and have come to the conclusion that appellant is correct in its contention and that the rule in this State, so

far as the law has been authoritatively declared by our courts of appeals, is out of harmony with the best considered cases elsewhere and I think not in accord with sound reasoning. To discuss the cases and present my reasons for the conclusions reached, will necessitate writing at considerable length.

### Missouri Decisions.

*Dezell v. Fidelity & Casualty Co.*, 176 Mo. 253 (Banc, 1903). Insured died as the result of taking voluntarily a dose of morphine prescribed by a physician to alleviate pain. The answer set up that insured intentionally took the morphine and that the result, death, was the accidental result and therefore insured did not die by accidental means. It does not clearly appear whether insured accidentally took an overdose or took the exact dose prescribed by the physician. The instructions were based upon the theory that insured accidentally took an *overdose* with fatal results. The majority opinion does not discuss the question of accidental result of an intentional act. It rode off on other issues, and apparently assumed that if death resulted from intentionally taking the medicine and unintentionally taking an overdose plaintiff was entitled to recover. The separate opinion of MARSHALL, J., held that recovery was authorized under the facts, although the policy excepted death or injury ''resulting from poison or anything accidentally or otherwise taken, administered, absorbed or inhaled.'' In this paragraph the majority of the court concurred. Nothing decided in the case constitutes it an authority for plaintiff's contention.

*Lovelace v. Travelers Protective Assn.*, 126 Mo. 104 (Div. One, 1894). Insured was shot and killed while attempting to put another out of a hotel office. It was held that death resulted through accidental means, although insured assaulted the man who shot him. The decision rested upon the proposition that the insured had no knowledge that the other man was armed and

hence did not intentionally assume risk of death. It affords no support for plaintiff's contention.

*Bellows v. Travelers Insurance Co.*, 203 S. W. (Mo.) 978 (Banc, 1918). The insured died as a result of a beating at the hands of footpads. The case is apparently not in point. The accidental means of death was assumed by the court.

*Berryman v. Surety Co.*, 285 Mo. 379 (Div. 2, 1920). The insured was killed while assaulting another. It was held that deceased had no reason to think his adversary was armed. There was no other discussion of the unexpected result of an intentional act. The case is in line with the Lovelace Case and numerous other cases of the same sort to be found in the reports of this and the various states, several of which are discussed in this opinion.

*Andrus v. Business Men's Accident Assn.*, 283 Mo. 442, 223 S. W. 70 (Div. Two, 1920). Insured died from self-administered carbolic acid. Plaintiff had judgment and defendant appealed. The judgment was reversed and remanded for error in instructions. This court held that if deceased intentionally took carbolic acid to take his life, recovery was not authorized, and that the burden was on defendant to show suicide. Judge WHITE, then commissioner, said: "This court, in the case of Lovelace v. Travelers' Protective Association, 126 Mo. 104, 28 S. W. 877, 30 L. R. A. 209, 47 Am. St. 638, quoted a number of definitions of accident, not only from the dictionaries, but from reported cases in a number of states. *In none of them is an 'accident' defined so as to include an intentional act.* Where a result is produced by a *means* unexpected, unintended, and unanticipated, it is accidental, but if the act and the result produced are exactly what was in accordance with the intention of the actor it was not accidental." (Italics ours). The case certainly is not authority supporting plaintiff's contention.

*Eicks v. Fidelity & Casualty Co.*, 300 Mo. 279, 253 S. W. 1029 (Div. One, 1923). Insured had an altercation with a neighbor, who unexpectedly picked up a broom handle, hitting him over the head, resulting in his death. While the opinion discusses injury or death by accidental means and suggests that there is no difference between unforeseen acts and unforeseen results under the Missouri decisions, it would seem that the jury in that case could well have found that the act of insured's adversary was just as unexpected and unforeseen as its result and that such suggestion was *obiter* under the facts there in issue. The case was properly ruled on authority of Berryman v. Surety Co., 285 Mo. 379, and Lovelace v. Travelers Assn., 126 Mo. 104, where such distinction was clearly recognized. The case is one where death was caused through accidental means, and is not authority for plaintiff's contention *under the issues actually decided.*

*Fetter v. Fidelity & Casualty Co.*, 174 Mo. 256 (Div. One, 1903). Insured was assisting his son to raise a window sash which had stuck. He was pushing with a window pole when the pole slipped out, throwing insured against a table. He died within thirty days from hemorrhage of the kidney. Autopsy revealed a cancerous kidney. It was held that there was substantial evidence authorizing the jury to find that the cancerous condition of the kidney was due to the fall against the table. The fall was held to be the accidental means of the injury and death. It is clear that the case was properly decided, but it is not in point on the facts in the instant case.

The foregoing constitute all the Missouri Supreme Court cases cited by respondent. It cannot be said that our Supreme Court decisions have established the rule contended for by plaintiff. What was said in those cases concerning the proposition, that if the result is accidental the injury or death was caused through accidental means, may justly be considered as *obiter*. However, this cannot be said of the decisions of the Missouri Courts of Appeals.

*Young v. Railway Mail Assn.*, 126 Mo. App. 325 (St. Louis, 1907). The insured was a mail clerk and ruptured a blood vessel in his lung while lifting a heavy mail sack. The injury was undoubtedly the unexpected result of an intentional act. There was no evidence of mishap or slip. The opinion discusses a number of cases which I will hereafter refer to, including Feder v. Traveling Men's Assn., 107 Iowa, 538; Niskern v. United Brotherhood of C. & J., 87 N. Y. Supp. 640; McCarthy v. Travelers Ins. Co., 15 Fed. Cases, No. 8682; Cobb v. Accident Assn., 96 Ga. 818; Southard v. Assurance Co., 34 Conn. 574; Appel v. Aetna Life Ins. Co., 83 N. Y. Supp. 238; Clidero v. Scottish Accident Ins. Co., 19 Session Cases, 355 (29 Scottish L. R. 303) and Smouse v. Traveling Men's Assn., 118 Iowa, 436. The court came to the conclusion that the foregoing cases were out of harmony with the best considered cases. BLAND, J., at page 342, said: ''In the foregoing cases it seems to us a too strict and illiberal definition of the term was adhered to. At any rate they are not reconcilable with the general trend of the best considered American cases, which hold that accidental means are those which produce effects which are not the natural and probable consequences of the act. 'An effect which is not the natural or probable consequence of the means which produced it, an effect which does not ordinarily follow and cannot be reasonably anticipated from the use of such means, an effect which the actor did not intend to produce and which he cannot be charged with the design of producing, is produced by accidental means.' [4 Cooley, Briefs on Law of Insurance, pp. 3156-7.] Joyce says an accident 'may be an unusual event attending the performance of a usual and necessary act, or an unusual effect of a known cause.' [Joyce on Insurance, sec. 2863.]''

From the foregoing it is clear that the court intended to hold and did hold that an injury or death, which is the unexpected result of an intentional act, is injury or death by accidental means, regardless of proof of

mischance or mishap in the performance of the act which produced the result. The opinion then cites and discusses numerous cases, most of which will be discussed later where deemed in point.

*Beile v. Travelers' Protective Assn.*, 155 Mo. App. 629 (St. Louis, 1911). Insured died from dilation of the heart, due to administering to him of a few drops of chloroform preparatory to an operation for fistula. No mishap or inadvertence in administering the chloroform is shown to have occurred. The physician did exactly what he intended to do in administering the chloroform and did not overadminister it. Following Young v. Railway Mail Assn., supra, the court held that the unexpected and unusual result of an intentional act was sufficient to sustain the finding of the jury that death resulted by accidental means. The case presents a situation quite similar to that in the case at bar.

*Merrick v. Travelers Insurance Co.*, 189 S. W. 392 (Kansas City, 1916). Insured was a dentist. The evidence tended to show that he became infected with germs present in pyorrhea and died therefrom. A patient who was infected with a serious case of pyorrhea coughed into insured's face. The question in the case was whether the infection so acquired or something else caused death. It was apparently assumed that if death resulted from infection from the pyorrhea germs thus derived, the death was by accidental means. The case is not in point here.

*Summers v. Fidelity Mut. Aid Assn.*, 84 Mo. App. 605 (Kansas City, 1900). Insured was a holster's helper in a railway shop. In lifting a heavy truck he suddenly gave down and said "I am hurt." He died soon after. Judge ELLISON held that the injury was inflicted by accidental means, but entered into no discussion of the subject and cited no cases. There is nothing to show whether any unforeseen or unexpected thing occurred in the lifting of the truck. The main controversy seemed to be whether the hernia resulting was caused by lifting

the truck or had existed prior thereto. The case cannot, therefore, be said to be an authority in support of plaintiff's contention.

*Hooper v. Standard L. & A. Co.*, 166 Mo. App. 209 (Kansas City, 1912). Insured died from cerebral hemorrhage. The question was whether hemorrhage was caused by accident or was the result of disease. The court held admissible as part of the *res gestae* a statement made by deceased that he fell in the street car. His arm was bruised. Judgment for defendant was reversed on account of erroneous instructions. The court held that if death from apoplexy was caused by the fall, it was the result of accidental means. The case is not in point on its facts. If the motion of the car caused deceased to fall and be injured, such injury certainly was caused through accidental means.

*Anderson v. Mut. Ben. H. & A. Assn.*, 231 S. W. 75 (Kansas City, 1921). Insured admittedly received an accidental injury to his finger. Blood poison ensued. It was held that the question whether diabetes resulted therefrom was for the jury. No question of accidental means was discussed.

*Goodes v. Order of U. C. T.*, 174 Mo. App. 330 (St. Louis, 1913). Insured fell backward off a stool by accident. He bled at the ear and nose and died in a few moments. The autopsy disclosed seriously diseased conditions. There was no question as to the accidental means, and the sole question was whether accident or disease caused insured's death.

*Driskell v. Health & Accident Ins. Co.*, 117 Mo. App. 362 (Kansas City, 1906). Insured died as the result of scalding water accidently falling into his ear, as alleged in the petition. The trial court sustained a demurrer to the petition. The appellate court held that the petition sufficiently alleged death as the result of violent and external means and remanded the case for trial. The case is not in point here.

*Columbia Paper Stock Co. v. Fidelity & Casualty Co.*, 104 Mo. App. 157 (St. Louis, 1904). Plaintiff was the holder of an employers' liability policy, protecting it against liability to employees on account of accidental injury. An employee recovered judgment against the insured, and insured was sued on such indemnity contract. The policy appears to have indemnified insured against loss from claims for injuries *accidentally suffered*. The court reviews numerous cases and reaches the same conclusion reached in Young v. Railway Mail Assn., 126 Mo. App. 325, and the case is therefore an authority tending to support plaintiff's contention.

*Johnson v. Casualty Co.*, 122 Mo. App. 369 (St. Louis, 1907). Insured met with an accidental fall. He was found unconscious and soon died. Death resulted either from cerebral hemorrhage or from traumatic pneumonia. It was held that it was for the jury to decide whether death was caused by the fall. If caused by the fall, it was clearly by accidental means. The case is not in point here.

*Greenlee v. Kansas City Casualty Co.*, 192 Mo. App. 303 (Kansas City, 1916). Insured fell in his bath room and died soon after. The questions were as to admissibility of statements of the deceased as part of the *res gestae* and whether the fall or disease caused death. The statement was held to be admissible, and that the evidence was sufficient to show that death occurred from accidental means, rather than from disease. The case is not in point.

## *Respondent's Cases Outside of Missouri.*

Respondent has cited numerous cases from other jurisdictions wherein the question presented and decided was whether death or injury resulted from accidental means or from disease. All such cases are passed without notice unless they contain some discussion of accidental means or accidental result as a basis for recovery upon policies of accident insurance. I cannot undertake to list such cases or others, deemed for one reason or

another not to be in point. About half of the cases outside of Missouri cited by respondent must be omitted from discussion for such reasons. I will discuss every case which may be fairly said to be in point and some I am confident are not in point.

*Rowe v. U. C. T. Assn.*, 186 Iowa, 454 (1919). Insured was killed by the overturning of an automobile which he was driving. The defense was that death was caused by voluntary exposure to danger and driving his automobile in violation of law, which risks were not covered by the policy. The opinion holds that the statement of the rule that, if injury is the result of an intentional act, then it is not caused by accidental means is too broad; that no distinction should be made on account of "accidental means." It was held that the jury may find an injury is produced by accidental means where an unexpected, unintended or unnatural result occurs without evidence of accident, slip or mischance in the act producing the result. It is hard to understand the necessity for this announcement in view of the facts in the case. There was no discussion in the opinion of exactly contrary rulings made by the Iowa Supreme Court in Carnes v. Traveling Men's Assn.; Feder v. Travelers Assn.; Smouse v. Traveling Men's Assn. and Lehman v. Accident Assn., which will be hereafter noticed. The Rowe case was ruled on Payne v. Fraternal Accident Ins. Co., 119 Iowa, 342, where insured was killed by a train while on the track, and the widow was permitted to recover where the policy provided against voluntary exposure to danger. It was held in the Payne case that it was a question for the jury and that the burden was on defendant to show that the exposure was voluntary. The Rowe case further relied on Jenkins v. Hawkeye C. M. Assn., 147 Iowa, 113, which held that death as the result of having swallowed a fish bone which lodged in the intestines was death by accidental means. The Jenkins case went off on the result rather than the means, and takes no notice of the Feder or

Caldwell v. Travelers Insurance Co.

Smouse cases previously decided, but refers to the Carnes case for definitions collected. The Rowe case also relies on Lickleider v. Traveling Men's Assn., 184 Iowa, 423, where insured was injured and died through a mishap in taking off an automobile tire, which came off suddenly causing him to fall. In the Lickleider case there was clearly the element of mishap, but the court goes further and holds that means is accidental where the act is intentional but the result is unexpected, unusual or unforeseen, and takes no notice of the Carnes, Feder, Smouse or Lehman cases. It is to be noted, however, that the Iowa Supreme Court subsequently took back its holding in the Lickleider case. [See Lickleider v. Traveling Men's Ins. Co., 168 N. W. (Iowa) 884.] The final holding by the court was that the death was due to a mishap in taking off the automobile tire. The Rowe case also cites and relies upon Hanley v. Fidelity & Casualty Co., 180 Iowa, 805. There a screwdriver used by insured slipped from the head of the screw and caused the injury. This brought in the element of mishap. There was no attempt to differentiate between accidental death and death by accidental means. The Rowe case also relies on Bohaker v. Travelers Ins. Co., 215 Mass. 32, where the insured while suffering from typhoid fever went upon a balcony and in some manner fell about thirty feet. There was no evidence that the fall was intentional and it might well have been caused by insured leaning against the railing, which was later found to be broken. It will be seen from the discussion of other Iowa cases that the Rowe case is out of harmony with a number of cases in that state, and it also seems that the cases relied upon therein do not support the rule announced.

*Higgins v. Midland Casualty Co.*, 281 Ill. 431 (1917). The insured suffered sunstroke, which was covered by the policy. The recovery was approved. The court announced the view that the unexpected result of an intentional act is a result by accidental means. The policy

covered injury from sunstroke by accidental means and there is nothing to suggest that insured intentionally subjected himself to dangerous exposure. The announcement, therefore, was apparently unnecessary on the facts in the case.

*Hood v. Maryland Casualty Co.,* 206 Mass. 223 (1910). Insured's employee contracted glanders through handling diseased horses. Hood was sued by the employee and suffered judgment. He paid the judgment and sued defendant on an employers' liability policy and was permitted to recover on the ground that the employee's disease was a bodily injury *suffered accidentally.* The employee knew nothing about the diseased condition of the horses and, therefore, did not intentionally handle them in that condition. The case can thus be distinguished.

*United States Casualty Co. v. Griffis,* 186 Ind. 126 (1916). Insured died from eating tainted or poisonous mushrooms. Recovery under the policy was permitted. The court recognized the rule that the death must have been caused by accidental means rather than the unexpected result of an intentional act to authorize recovery. There was no evidence that deceased had any intention of eating poisonous mushrooms. It was held that the eating of *poisonous* mushrooms was accidental. (Practically all of the cases where the facts show that death or injury resulted from eating poisonous food or taking poisonous medicine in ignorance of its quality and like cases hold such death or injury to be through accidental means).

*Travelers Insurance Co. v. Melick,* 65 Fed. 178 (C. C. A.) (1894). The insured accidentally shot himself in the foot. Tetanus ensued and in a tetanic spasm he stabbed himself with a scalpel. The defense was suicide. There was evidence that either the tetanic spasm or the cut made with the scalpel would have sufficed to cause death. Held, that the approximate cause of death was for the jury. There was no question of unexpected result of an intentional act discussed in the case.

*Sullivan v. Modern Brotherhood of America,* 167 Michigan, 524 (1911). Insured unintentionally splashed water in her eye while doing the family washing. She rubbed her eye. Gonorrheal infection set in and she lost her eye. Recovery was sustained. Held, that the injury was due to accident and not to disease. It was also held that the act of splashing the water was not designed or intentional. The opinion apparently recognized the rule that the unexpected result of an intentional act does not constitute accidental means, and, if the case is of value here, it is as an authority for defendant's contention.

*Patterson v. Ocean A. & G. Corp.,* 25 D. C. App. 46 (1905). The insured was an osteopathic physician. He strained his back while treating a patient. He died from inflammation of the liver, induced by the strain. It was held that recovery was authorized. There was no showing as to whether the injury was the unexpected result of an intentional act or resulted from some mishap or slip and the case leaves it uncertain just how the strain was caused. There is no discussion of that feature. The case is only referred to because it may be considered in point on its facts, but not for any ruling made.

*Nax v. Travelers Insurance Co.,* 130 Fed. 985 (1904). Insured died from blood poisoning following a self-inflicted knife cut while trimming a corn. In six lines the court held the injury was accidental, citing and relying on Western C. T. A. v. Smith, 85 Fed. 405. There was no discussion of the accidental result of an intentional act. In the Smith case insured suffered an abrasion of the skin from wearing new shoes. It was there held that the abrasion was unintentional and therefore accidental. It would seem to have been a question for the jury whether Nax intended to cut deeply enough to injure his toe and, if not, it was plainly a mishap.

*Gallagher v. Fidelity & Casualty Co.,* 163 App. Div. (N. Y.) 556 (Affirmed 221 N. Y. 664, without opinion. 1914). Insured died from sunstroke. His act in going into the sun was intentional. The result was unusual

and unexpected. The policy covered death from sunstroke suffered by accidental means. The case lends some support to plaintiff's contention. However, the court apparently recognized the general rule that an intentional act resulting in unexpected injury does not constitute accidental means.

*Horton v. Travelers Insurance Co.*, 187 Pac. (Cal.) 1070 (1920). Insured died from blood poisoning. The infection was received from germs upon dental instruments. The presence of germs thereon was unsuspected. The work, therefore, was either unskillfully done or the inoculation was unintentionally received. The recovery was upheld. The court recognized the soundness of the rule announced in Rock v. Travelers Ins. Co., 156 Pac. (Cal.) 1029, which will be hereafter discussed, but held that the infection was unintentional and therefore the death was by accidental means. This case really is an authority for defendant's contention.

*Aetna Life Insurance Co. v. Fitzgerald*, 165 Ind. 317 (1905). Insured went to sleep with his head on his hand and unintentionally injured it, causing periostitis. The element of volition was entirely absent and the case can thus be distiguished from one where the unexpected result of the intentional act is involved.

*Collins v. Casualty Co.*, 224 Mass. 327 (1916). Concededly the insured accidentally suffered a rupture. After an operation therefor he died for some obscure reason, growing out of the administration of ether. It was held that death resulted from accidental means. Etherization was an incident of the operation and the operation was the necessary, although unsuccessful, treatment of the rupture which was clearly caused by accidental means.

*Hamlyn v. Crown Insurance Co.*, 1 Q. B. D. 750 (English, 1893). Insured stooped to pick up a marble and injured his knee. It was held that the means must be violent and accidental and not the result. The case tends to support defendant's rather than plaintiff's contention.

*Lewis v. Iowa State Traveling Men's Assn.,* 248 Fed. 602 (1918). Insured opened a pimple with his tie pin, which was infected. Death resulted. It was held that the means was accidental and recognized the rule that it is the means and not the result which must be accidental. WADE, District Judge, said: "If the injury resulted from the pin alone, and there was no proof that the pin was infected, the accidental result would not be covered by this policy; but the deceased clearly used something which he did not intend to use. He used, not only the pin, but he used an infected pin—a poisoned pin. This infection was such that it could not, in the nature of things, be discovered by him without perhaps a microscopic investigation. To my mind the means were clearly accidental. A man who eats infected food, without knowledge of its infection, is doing something he did not intend to do. The eating of the food is voluntary, but the eating of the poison is not. The housewife goes to the flour bin, kneads her bread, bakes it, and serves it. Those who eat it die. It is found that the bin contains, not only flour, but arsenic. The unfortunates voluntarily ate the bread, composed of flour and arsenic. The 'means,' causing death, is accidental. I see no distinction in principle between the case at bar and the numerous cases illustrated by ptomaine poisoning, and other cases of unintentional infection." Judge WADE had previously said: "It may be taken as settled by the great weight of authorities that, under language of this kind in a policy, it is not sufficient that the result shall be accidental, but the 'means' must be accidental, as well as the result." The case is clearly an authority for defendant's contention.

*Life & Accident Ins. Co. v. Schmaltz,* 66 Ark. 588 (1899). The insured was removing a cylinder head which had stuck. He took a bar and removed it, then dropped the bar and caught the cylinder head to keep it from falling. He thus ruptured a blood vessel and died. The trial court instructed the jury that the means, not the

result, must be accidental, and that they must find the means was accidental before recovery was authorized. Instruction 3 was: "If the jury find from the evidence that, in the removing of the cylinder head from the engine, and carrying it off and putting it down, deceased acted in the manner he intended to act, and used the means he intended to use in the manner he intended to use them, and in so doing a blood vessel was ruptured, then you are told that the injury was not the result of accidental means, and plaintiff cannot recover." The Supreme Court approved the instruction. In discussing the evidence of accidental means, the court said: "At the time he was injured he was attempting to perform the same act in the usual way, but there is reason to believe that he failed in this, and in an effort to prevent the head from falling he made some sudden, unusual, unexpected and involuntary movement of the body, which caused the injury from which he died." The case is ruled largely on United States Mutual Accident Assn. v. Barry, 131 U. S. 100. It is an authority for defendant's contention.

*Atlantic Accident Assn. v. Alexander,* 104 Ga. 709 (1898). Insured was using a heavy sledge in blacksmithing. In striking a slanting blow a rupture occurred, which produced death. The case was decided on the authority of U. S. Mutual Accident Assn. v. Barry, supra. The court found there was evidence of accidental means as distinguished from accidental result, and said, at page 712: "Taking all the facts together, the fact of his previous good health, the fact that he had many times before used the hammer, the sudden pain after the blow of the hammer, and other facts which appeared, the jury could properly infer that the act which preceded the injury was something unforeseen, unexpected, and unusual, and that the injury resulted directly and immediately from such act, and was therefore produced by external, violent, and accidental means." The case tends to support defendant's contention rather than plaintiff's.

*Ludwig v. Preferred Accident Ins. Co.*, 113 Minn. 510 (1911). The insured was a ball player. In stealing second base, he made a slide head first. The base was a paving block. He immediately gave evidence of injury. Appendicitis and death followed. Recovery was authorized on the ground of mishap in striking the base. The opinion purports to follow U. S. Mutual Accident Assn. v. Barry, supra. It lends no support to plaintiff's contention.

*Budde v. National Travelers Benefit Assn.*, 184 Iowa, 1219 (1918). Insured was carrying ashes in a tub. He finished his task and complained of pain. Some discoloration of the abdomen was found. He became ill and finally died. The autopsy revealed a kink in the bowels and other resultant troubles. A physician testified: "It would require some quick move, slip, other than ordinary handling of a basket to produce that condition." The court held that the injury could not well have been intentional and cites the Barry case. A very vigorous dissent was filed by SALINGER, J. The facts in the case rather than the language used in deciding the case tend to support plaintiff's position in the case at bar.

*Frommelt v. Travelers Insurance Co.*, 150 Minn. 66 (1921). Insured suffered from a stricture of the urethra. A physician passed a metal catheter through the urethra, causing laceration. Infection ensued, followed by death. An operation gave no relief. The court said: "As basis in part for his opinion he indicated that it was probable from the symptoms and facts developed that infection set in very early, that there were indications that it had set in before the operation in the afternoon, and, the much greater probability of infection from a laceration caused by a catheter at a place within, where there had been no cleansing or sterilization, than by an operation with a knife in the hand of an experienced surgeon, and at a place where cleansing and sterilization were easy. We think the evidence sustains a finding of accidental death." By "accidental death" the court doubt-

305 Mo.—41.

less meant death by accidental means. All the facts indicate an unexpected and accidental injury to the urethra.

*Elsey v. Fidelity & Casualty Co.*, 187 Ind. 447 (1918). The insured suffered a sunstroke. The policy covered sunstroke by accidental means. He entered a street car and sat down while the car was in the shade. The car moved out into the sun and insured was then deprived of the shade. The defendant contended that the exposure to sunstroke must have been through casualty and not by the voluntary act of the insured. It was held that the insured was entitled to recovery, but the court said, at page 450: "We are of opinion that the better reasoning points out, and the weight of authority holds, the true test to be that, if in the act which precedes the injury, though an intentional act, something unusual, unforeseen, and unexpected occurs which produces the injury, it is accidental; but, if in the act which precedes the injury something usual, foreseen and expected occurs which produces the injury, it is not accidentally effected."

*Lewis v. Ocean A. & G. Corp.*, 224 N. Y. 18 (1918). Insured died from infection, caused by puncture of a pimple. The opinion apparently considered the unexpected and unforeseen result as equivalent to accidental means and the mere fact of the puncture was held to be an accident and the case lends some support to the contention of plaintiff in the case at bar. However, the introduction of germs by reason of the puncture could well have been regarded as accidental means, even though the puncture was intentional.

*Interstate B. M. Accident Assn. v. Lewis*, 257 Fed. 241 (C. C. A.) (1919.) Insured punctured a pimple with an infected scarf pin. It became infected and he died. Recovery was sustained. It was held that there was no proof that insured knew of the infected condition of the scarf pin and therefore that the injury was inflicted by accidental means. The case lends no support to plaintiff's contention.

*Miller v. Fidelity & Casualty Co.,* 97 Fed. 836 (1899). While in a weakened condition, the insured ate food containing hard, pointed and resistant substances and internal injuries ensued, from which he died. It was not shown that the food was eaten accidentally or eaten in ignorance of the injurious qualities thereof. No cases are cited, but the case seems to have been decided upon the theory of an accidental result and not accidental means, and to that extent lends support to plaintiff's contention.

*Hornby v. State Life Ins. Co.,* 184 N. W. (Neb.) 84. Insured injured his thumb probably by contact with a sand burr. He was an undertaker and did embalming and possibly became infected in that way. His arm became inflamed and he died. It was held that in the absence of a showing that the wound was intentionally inflicted, the presumption of accident followed. The case cannot be said to be an authority supporting the plaintiff.

*Independent Order of Puritans v. Lockhart,* 212 S. W. (Texas) 559 (1919). Insured's eye was injured by wind blowing dust in it. The court seems to have assumed that the blowing of dust was not an accident, but that the injury followed from the "unusual effect of the known cause," and that the accidental means was determined from the effect and not from the cause. No cases are cited and there is no discussion of what constitutes accidental means. It may be that in Texas, at the season of the year when the injury occurred, the blowing of dust in one's eye is not accidental, but, to persons living in quieter portions of the country, that conclusion scarcely seems to be sound.

*Bailey v. Int. Casualty Co.,* 40 N. Y. Supp. 513 (Affirmed, 158 N. Y. 723, without opinion, 1896). The insured was injured by a hypodermic needle. The court cited the Barry case. It was suggested that the movement of the horse may have caused the needle to go deeper than he intended. He was sitting in a buggy at the time. He was intentionally using the hypodermic needle. It

was held that there was evidence from which the jury might find the injury resulted from accidental means. There is not sufficient discussion of accidental means to make the case a satisfactory authority for plaintiff.

*Gallagher v. Fidelity & Casualty Co.,* 163 App. Div. (N. Y.) 556 (Affirmed, 221 N. Y. 664, 1914). The insured suffered sunstroke. It was held that the plaintiff was entitled to recovery as for an injury by accidental means.

*Continental Casualty Co. v. Clark,* 173 Pac. (Ok.) 453 (1918). Insured died as a result of sunstroke. It was held that the death was by accidental means, since deceased did not knowingly and intentionally expose himself to the heat of the sun without regard to the consequences. It was held that ''means'' and ''cause'' meant the same thing. If anything, the case is an authority for defendant's contention in the case at bar.

The cases of *Interstate Business Men's Assn. v. Lester,* 257 Fed. 225 (C. C. A., 1919); *State Life Ins. Co. v. Allison,* 269 Fed. 93 (C. C. A., 1920); and *Great Southern Ins. Co. v. Churchwell,* 216 Pac. (Ok.) 676, are all cases where the insured was killed in battle, the first being with strikers in Colorado, and the last two in the late war in Europe. Is these cases recoveries were sustained. There were no provisions in the policies excepting injury in battle or forbidding military service, and it was held in substance in each case that, while the insured knowingly entered the battle aware of the danger, yet the fact that bullets found their marks in their bodies was accidental. On these facts the cases are so distinguished as to constitute no authority for plaintiff's contention.

The above constitute all the cases cited by respondent, which we deem sufficiently in point to notice. There is another widely cited case referred to in many of the cases which plaintiff failed to cite. It is the case of *Horsfall v. Pac. Mut. Life Ins. Co.,* 32 Wash. 132 (1903). The insured was assisting in carrying a heavy

iron bar.  He had to stoop in an unnatural position to lift his end of the bar.  He immediately complained, and became sick and soon after died from dilated heart. There was no discussion of unexpected result of an intentional act, nor was there any evidence of slip or mishap.  While there was no discussion of the question, the case is apparently in point on its facts, and has been frequently cited in cases holding in conformity to plaintiff's contention in this case.

*Accident Assn. v. Barry,* 131 U. S. 100 (1889). Plaintiff has cited and relies upon this case.  It has been frequently cited as authority on each side of the question we are considering.  As it is a decision by the U. S. Supreme Court, it should be discussed fully.  The insured in that case was a physician.  He and others came out of a building and jumped from a platform four or five feet in height.  The insured jumped last and landed on his feet heavily and with a jar.  He at once became very ill. His death followed nine days afterward and was found due to a stricture of the duodenum, which could have been caused by the jar.  The jumping off of the platform was intentional.  The trial court instructed the jury that, ''And I instruct you that if Dr. Barry jumped from the platform and alighted on the ground in the way he intended to do, and nothing unforeseen, unexpected or involuntary occurred, changing or affecting the downward movement of his body as he expected or would naturally expect such a movement to be made, or causing him to strike the ground in any different way or position from that which he anticipated or would naturally anticipate, then any resulting injury was not effected through any accidental means. (But if, in jumping or alighting on the ground, there occurred, from any cause, any unforeseen or involuntary movement, turn, or strain of the body, which brought about the alleged injury, or if there occurred any unforeseen circumstance which. interfered with or changed such a downward movement as he expected to make, or as

ıt would be natural to expect under such circumstances, and as caused him to alight on the ground in a different position or way from that which he intended or expected, and injury thereby resulted, then the injury would be attributable to accidental means)."

The United States Supreme Court approved this instruction on the theory that there was evidence of some miscalculation or mishap on the part of the insured between the time he left the platform and the time his feet struck the ground. The court said that: "The court properly instructed them that the jumping off of the platform was the means by which the injury, if any was sustained, was caused; that the question was whether there was anything accidental, unforeseen, involuntary, unexpected, in the act of jumping, from the time the deceased left the platform until he alighted on the ground; that the term 'accidental' was used in the policy in its ordinary, popular sense, as meaning 'happening by chance; unexpectedly taking place; not according to the usual course of things; or not as expected;' *that, if a result is such as follows from ordinary means, voluntarily employed, in a not unusual or unexpected way, it cannot be called a result effected by accidental means; but that if, in the act which precedes the injury, something unforseen, unexpected, unusual occurs, which produces the injury, then the injury has resulted through accidental means."* (Italics ours.)

I am unable to understand how the language used in the instruction to the jury given by the trial court and approved by the Supreme Court of the United States can be construed as lending any support to the doctrine that where the injury is the unexpected result of an intentional act, it is caused by accidental means. The United States Supreme Court defined what is meant by accidental means and that definition is undoubtedly correct, but apparently courts have taken that definition and applied it to the result, and not to the means which produces the result. The case is not only not an author-

ity for plaintiff, but, in my judgment, is the strongest sort of authority for defendant's contention.

*Cases Cited and Relied upon by Defendant.*

In *Stokely v. Fidelity & Casualty Co.*, 193 Ala. 90 (1915), an operation was performed on insured to relieve appendicitis. The wound closed and apparently progressed favorably. There were no complications for four or five days, when insured went into a fit of vomiting and the wound was re-opened and insured died. It was held that the rupture of the stitches was not an accident causing the death, but was a failure of the means taken to prevent death from other independent causes. It is quite similar on its facts to the case at bar.

*Southard v. Assurance Co.*, 34 Conn. 574 (1868). The insured jumped off a train without injury and hurried to another station to see someone. He thereafter had only a short time to catch his train and ran part of the way back to the first station. A rupture appeared. Nothing unusual or unexpected in his movements in running was shown. It was held that the jumping and running were intentional acts, and that the injury occurred through no mishap, and therefore there could be no recovery.

*Rock v. Travelers Ins. Co.*, 156 Pac. (Cal.) 1029 (1916). The insured in this case died from acute dilation of the heart, caused by overexertion on his part in carrying down stairs one end of the burial casket at a funeral. No mishap, slip or mischance was shown to have occurred any more than the heavy lifting and possibly the holding of insured's end of the casket in an unnatural, although voluntary, position. A recovery was denied. The opinion ably differentiates between accidental death and death by accidental means.

*Bennetts v. Occidental Life Ins. Co.*, 178 Pac. (Cal. App.) 964 (1919). Insured died soon after lifting a heavy iron pipe. No mishap or unexpected event was shown to have occurred. The death was held not to be due to accidental means, following Rock v. Ins. Co., supra.

*Olinsky v. Railway Mail Assn.,* 189 Pac. (Cal.) 835 (1920). Insured went bathing and attempted to swim against a strong current, causing strenuous exertion. He began to bleed at the mouth and several hemorrhages ensued and death followed. He had been suffering from tuberculosis. It was held that there could be no recovery, and the opinion carefully differentiated between accidental death and death by accidental means.

*Cobb v. Accident Assn.,* 96 Ga. 818 (1895). Insured was carrying some heavy baggage, and his eyesight was injured by the strain or overheating in that work. No slip or mishap of any sort was shown. The injury was held not to have been due to accidental means and recovery was denied.

*Schmid v. Accident Assn.,* 85 N. E. (Ind. App.) 1032 (1908). The insured lived in Indiana where the altitude was relatively low. He went to Colorado Springs, Colorado, and, in an altitude of approximately six thousand feet, carried his heavy grips up a long flight of stairs to the Antlers Hotel. The exertion in such rarefied atmosphere caused his death. A recovery was denied. The court held that where injury occurred as the result of intentional acts, it is not produced by accidental means. The cases on the subject were extensively and clearly reviewed.

*Husbands v. Travelers Accident Assn.,* 133 N. E. (Ind. Sup.) 130 (1921). Insured's death was directly due to a hemorrhage caused by his exertion in shaking down the ashes in a furnace. The case approves the Schmid case, supra, and held there could be no recovery as for accident, and carefully differentiated between death by accident and death by accidental means.

*Carnes v. Traveling Men's Assn.,* 106 Iowa, 281 (1898). It was held that where insured took morphine, knowing how much he was taking and died as a result thereof, such death was not produced by accidental means, even though he did not know that such amount of morphine would produce death. A recovery was denied

and the court distinguished between an accidental death and death by accidental cause.

*Feder v. Traveling Men's Assn.*, 107 Iowa, 538 (1899). The insured was tubercular. His death was caused by hemorrhage resulting from a ruptured artery. He stood on a chair and reached over and closed a window and this act induced the hemorrhage. There was no evidence of any slip or fall or unexpected strain in closing the window or that he lost his balance. Recovery was denied, and the court made the same distinction made in the Carnes case, supra.

*Smouse v. Traveling Men's Assn.*, 118 Iowa, 436 (1902). The insured had been ill with pneumonia and was apparently recovering, but was still very weak. Some friends called to see him and his wife awakened him and told him of their visit. He made a sudden and strenuous effort to remove his nightshirt by pulling it over his head and in some way sustained rupture of a blood vessel and died. The court held that if the strenuous effort to remove the nightshirt was an intentional act, there could be no recovery. It was held that the case should be submitted to the jury on the question of whether the effort was intentionally made, and said there could be no recovery for the accidental result of an intentional act.

*Lehman v. Accident Assn.*, 155 Iowa, 737 (1911). Insured was engaged in bowling and while so engaged strained his side. Soreness ensued and appendicitis was found to have developed. Recovery was denied and it was held that the injury was the unexpected result of an intentional act; that the means which inflicted the injury must be accidental, and not the result. There was no slip or falling or unexpected movement on the part of the insured at the time he received the strain.

The four cases last above cited were discussed somewhat in my consideration of Rowe v. U. C. T. Assn., 186 Iowa, 454, wherein it was shown that the Rowe case is out of harmony with other well considered cases in Iowa.

*Salinger v. Fidelity & Casualty Co.*, 178 Ky. 369 (1917). Insured lost his sight through exertion in placing boxes upon a high shelf. His exertion was intentionally undergone, and it was held that the injury was not caused by accidental means.

*U. S. Casualty Co. v. Malone*, 87 So. (Miss. Sup.) 896 (1921). The insured died from an infection received from a towel while rubbing his foot. It was held that his act was intentional, and not accidental, and that there could be no recovery because his death was not caused by accidental means. Other cases have been noted where the infection was received by towel or other instrument not known to have been infected and recovery sustained.

*Tuttle v. Life Ins. Co.*, 190 Pac. (Mont.) 993 (1920). The insured was a member of a hunting party and went off in the mountains by himself and was not seen or heard from for a long time. Later he was found dead. There was no evidence whatever of the cause of his death. There was also no timely notice of death. The citation therefore is of little value, except that the opinion recognizes the distinction between accidental death and death by accidental means.

*Fane v. Association of Railway Mail Clerks*, 188 N. Y. Supp. 222 (1921). The insured was ruptured while lifting a heavy sack of mail. No lurch of the train, slip or mishap is shown to have occurred. The only unusual thing which occurred was that the strain resulted in a rupture. It was held that the act in lifting the mail sack was intentional and that only the result was accidental and, therefore, there could be no recovery. This case is quite similar in its facts to Young v. Railway Mail Assn., supra, decided by the St. Louis Court of Appeals, which reached exactly the opposite conclusion.

*Appel v. Ætna Life Ins. Co.*, 83 N. Y. Supp. 238 (Affirmed 180 N. Y. 514-1903). The insured died from appendicitis, caused by intentionally riding a bicycle. An operation to relieve him was performed, but he died three days later. The appendix was found to have been

ruptured and to have been diseased. No showing was made of unusual shock, fall or mishap, and it was in evidence that the use of the muscles could have caused the rupture. No recovery was allowed for the unexpected result of an intentional act.

*Niskern v. Brotherhood of Carpenters*, 93 App. Div. (N. Y.) 364 (1904). Insured suffered disability from intentional exertion in lifting a heavy timber. It was held that the disability was not caused by accidental means. However, the policy was not an accident policy.

*Barnstead v. Commercial Travelers Assn.*, 204 App. Div. (N. Y.) 473 (1923). Insured died after administration of nitrous.oxide gas for tooth extraction. His previous condition was such that he was liable to sudden death. The gas was skillfully administered and at his request. Held, that death was not caused by accidental means, though death was not the usual result of the use of such gas. This is one of the few cited cases which is at all similar to the case at bar on the facts.

*Casualty Co. v. Johnson*, 91 Ohio St. 155 (1914). The insured suffered disability from dilation of the heart, due to a shock from a cold bath. Insured intended to do just what he did do. There was no slip or fall or mischance shown to have occurred. It was held that there could be no recovery for the unexpected result of an intentional act.

*Pledger v. Business Men's Accident Assn.*, 197 S. W. (Tex.) 889 (1911). The insured ruptured his heart in lifting cotton bales. It was held that if the result was caused by an intentional act, there could be no recovery, but the court held that the clause limiting recovery to death by accidental means was hidden among obscure conditions on the back of the policy and was ambiguous, and permitted the recovery on the ground of accidental death as distinguished from death by accidental means.

*Westmoreland v. Accident Ins. Co.*, 75 Fed. 244 (1896). The insured was suffering pain and had chloro-

form administered to relieve such pain and choked or smothered before coming under the influence of the chloroform. The citation is of no value here, because the cause of death was known and was excepted by the terms of the policy and the denial of recovery went off on that point.

*Travelers Insurance Co. v. Selden,* 78 Fed. (C. C. A.) 285 (1897). Insured ran up a hillside and was attacked by pains in his head and died. Apoplexy superinduced by intentional exertion was the cause of death. There was no stumbling or falling or any mishap. The citation is of no value here, because the case went off on the point that there was no evidence of accident and conclusive evidence of disease.

*Shanberg v. Fidelity & Casualty Co.,* 158 Fed. (C. C. A.) 1 (1907). This is a widely cited case. The insured had fatty degeneration of the heart, and suffered a heart rupture from over-exertion intentionally undertaken in helping carry a door weighing about eighty-six pounds. No slip, fall or wrench was shown to have occurred. It was held that there could be no recovery on the ground that the heart rupture was the accidental result and not the accidental means through which death was effected.

*Hastings v. Travelers Ins. Co.,* 190 Fed. 258 (N. Dak.) (1911). Insured died from dilation of the heart, induced by a voluntary effort in raising and lowering himself by his arms from a sitting position in a Morris chair. This was done in an exhibition of his strength. Nothing unexpected or unusual happened during the physical exercise, except the result itself, and it was held that there could be no recovery.

*Whitehead v. Railway Mail Assn.,* 269 Fed. (C. C. A.) 25 (1920). Insured voluntarily got off of a moving railroad train and went to a place below a bridge over which the train was moving. He was injured in the course of such movement. The facts are not elaborated upon and the citation does not appear to be of value.

*Clidero v. Scottish Accident Ins. Co.,* 29 Scottish Law Rep. 303 (1892). This case has been widely cited. Insured was putting on his stockings, leaning over for that purpose, when he felt something give way. His colon was displaced, causing distension with stoppage of the heart. The majority of the court found that the displacement was not due to any unexpected strain or wrench, but was the result of an intentional act and there could be no recovery.

The above constitute the court opinions cited by defendant. The case of McCarthy v. Travelers Ins. Co., 15 Fed. Cases, No. 8682, decided in 1878, has been cited in a number of cases we have discussed. There the insured died from a ruptured blood vessel in his lung. The evidence tended to show that he was intentionally swinging Indian clubs and one of the clubs struck the stove and caused an unexpected strain. The law announced was declared in an instruction to the jury by the Federal Circuit Court in Wisconsin. Part of the instructions are set forth because they very clearly express the law governing the point in controversy here. I quote from page 1255, as follows:

"I instruct you that if the deceased voluntarily took in his hands the clubs for exercise, and used them for such exercise in the way and precisely as he intended to do, and without anything occurring to interfere with his intended and usual movements in such exercise; that is, if he voluntarily used them in the ordinary way for taking such exercise, without the occurrence of any unusual circumstance interrupting or interfering with such use, or causing an unforeseen, accidental or involuntary movement of the body, and in such use of the clubs there occurred the rupture of a blood vessel and consequent injury as claimed, I do not think it could then be said that the means through which the injury was effected were accidental. But, if while engaged in such exercise there occurred any unforeseen, accidental or involuntary movement of the body of the deceased,

which, in connection with the use of the clubs, brought about the injury; or, if there occurred any unforeseen or any unexpected circumstance which interfered with or obstructed the usual course of such exercise, and there was thereby produced an involuntary movement, strain or wrenching, by means of which the injury was occasioned, that would be an accident within the spirit of this policy; that is, the means by which the injury was effected would in such case be accidental.''

I will also notice three other cases which I do not find cited in the briefs of either appellant or respondent. They tend strongly to support appellant's contention.

*Ramsey v. Fidelity & Casualty Co.*, 223 S. W. 841 (Tenn. Sup. Ct. 1920). A demurrer to the petition was sustained by the trial court. Petition failed to charge that the injury was caused by *accidental means*. Insured had a tooth extracted and bacteria entered the wound, resulting in a fatal attack of blood poisoning. HALL, J., said:

"The bill does not allege that the tooth was pulled by accident, nor does it allege that any accident happened while the tooth was being pulled. The means by which the gum was injured were intentionally and purposely applied. The insured knew that the inevitable result of pulling the tooth would be to break down and lacerate the gum tissue. It was the result that followed the pulling of the tooth and the laceration of the gum tissue that was unlooked for, unexpected, and unforeseen. There can be no inference from the allegations of the bill that there was any accident in connection with the pulling of the tooth. The injury, which resulted to the gum from the pulling of the tooth, was the ordinary and natural result of such an operation.

"It was held by this court in Stone v. Fidelity & Casualty Co., 133 Tenn. 673, 182 S. W. 252, L. R. A. 1916D, 536, Ann. Cas. 1917A, 86, that the general rule is that an injury is not produced by accidental means within the meaning of an accident policy, where the in-

jury is the natural result of an act, or acts, in which the insured intentionally engages. In that case this court, speaking through Special Justice Fancher, said:

" 'A person may do certain acts the result of which produces unforeseen consequences resulting in what is termed an accident; yet it does not come within the terms of this contract. The policy does not insure against an injury that may be caused by a voluntary, natural, ordinary movement, executed exactly as was intended.

" 'Therefore, to determine the matter, we look not to the result merely, but to the means producing the result. It is not sufficient that the injury be unusual and unexpected, but the cause itself must have been unexpected and accidental.'

"In that case Stone (the insured) had attended a football game on a cool day when the ground was damp and contracted a cold, resulting in lumbago, and who, after medical treatment and the debility resulting from a purgative which he had taken, and while lying in bed, had a paper brought, reached for it, and raised it suddenly above his head, when his strong blood pressure caused a rupture of the retina, destroying the sight of one eye. In that case the court further said:

" 'The movement of the hand suddenly to get the paper was executed exactly as intended. It was a simple and ordinary movement. The rushing of the blood with excessive pressure, rupturing the retina, was therefore caused by natural means. While the result was not foreseen, the causes producing that result were not accidental. It is well in line with the cases above cited sustaining the majority rule, which we adopt. This rule affords a reasonable interpretation of the contract.'

"Mr. Joyce, in his recent work on Insurance, states the rule thus: 'In this connection it may be noted that the language of the policy may, it is held, warrant a distinction between accidental death and accidental means. Thus in case of an insurance against death from bodily injury caused by violent, accidental, external, and visi-

ble means, the court said: "A person may do certain acts the result of which acts may produce unforseen consequences, and may produce what is commonly called accidental death, but the means are exactly what the man intended to use, and did use, and was prepared to use. The means were not accidental, but the result might be accidental." This distinction is more clearly apparent where the policy uses words intended to qualify or extend the rule as to proximate and remote cause, as where the provision is "shall die from the effects of such injury." Here the death need not be immediately caused by the injury, yet if the injury was immediately caused by the accident, and the death ensued as a natural consequence or effect of the injury, then the assurer is liable. So in an Iowa case a distinction is also made between an accidental cause and an accidental result, between an agreement to pay the policy amount in case assured should meet with an accidental death, and in undertaking to pay said amount in case assured's death is produced by accidental means. In other words, the result may not have been intended nor anticipated, and may have been such that it could not have been foreseen. The voluntary and intentional act of the person suffering the unanticipated result may have been the immediate cause of the result. Nothing may have been done or have occurred which assured had not foreseen and planned, except the injury and the consequence resulting therefrom, and, again, the result which follows assured's act may not have been the usual result thereof, but may have been unusual and unexpected and still not be accidental, as where the act which produced such unexpected result was voluntary. The above applies where the policy provides for recovery in the event of death, but only where death results from bodily injuries effected solely by external, violent, and accidental means. The means which cause the injury only, and not the injury itself, are referred to by the clause of an accident policy providing that the insurer's liability shall attach only

when the injury is through "external, violent and accidental means." ' "

The opinion then cites and quotes from numerous cases we have discussed, and affirmed the action of the trial court, and concluded as follows: "We think, according to the great weight of authority, the rule is that the means must be accidental. It is not sufficient that the illness or death that followed the means was accidental. In the instant case the injury to the gum, from which blood poison resulted, was the natural result of pulling the tooth, and one which the insured knew would be inevitable."

*Herdic v. Maryland Casualty Co.,* 149 Fed. 198 (Cir. Ct. App., 3rd Cir. 1906). Insured's death resulted from septicæmia ensuing upon a surgical operation for appendicitis. The action of the trial court in sustaining a demurrer to the statement of claim or petition was affirmed. The policy covered death resulting from septicæmia, but the court held that the policy did not cover such death unless caused by accidental means. No cases were cited. The ruling was based upon a construction of the policy itself. The petition alleged that defendant "did insure Carl Herdic in the sum of $5000 against death from septicæmia" and evidently did not charge that such septicæmia was caused through accidental means.

*Kendall v. Travelers Ins. Co.,* 169 Pac. 751 (Ore. Sup. Ct. 1918). Plaintiff appealed from an order granting defendant a new trial. The order was affirmed. The court held the following instructions requested by defendant should have been given:

"The jury is instructed that if plaintiff directed the barber to remove the ingrowing hairs from his chin, and the barber proceeded to remove the hair under instructions from plaintiff, plaintiff cannot recover in this case, even though the work of the barber was unskillfully done and the results were such that neither the plaintiff nor barber anticipated.

305 Mo.—42.

"If the abrasion of plaintiff's chin was due to the intentional act of the barber in endeavoring to remove an ingrowing hair thereon, plaintiff cannot recover, and your verdict should be for the defendant."

The court then said:

"We note that the defendant does not insure merely against injuries, although they might constitute an unexpected effect. The damage, whether anticipated or not as a result, must have happened through accidental, violent, and external means. All three of these ingredients must unite to form the cause of the subsequent hurt before there can be a recovery under the admitted terms laid down in the constitution and by-laws of the defendant. A man's leg might be broken by a runaway team coming suddenly upon him from behind. He might reasonably expect to be confined to his bed for some weeks, and yet the cause of the fracture would be accidental. On the other hand, he might purposely inflict upon himself a slight pin scratch which would ordinarily pass unnoticed and septicæmia might ensue and unexpectedly amputation of the injured part might become necessary, yet the scratch would not be accidental. In other words, under such a policy as this the liability must be determined by causes rather than consequences.

"It may be conceded that the injury inflicted by the barber's tweezers was external. We cannot stop to weigh and haggle about the degree of violence involved. The question to be determined is whether the cause of the injury was accidental, and whether the instructions asked for should have been given. . . .

"The jury might consider that it was impossible to perform the required operation without making some incision of the skin so as to reach the hair growing underneath, and that on that account the barber intentionally, and with the implied consent, at least, of the plaintiff, made the cut which afterwards became infected. This would not be an unwarranted conclusion from the plaintiff's own testimony. If, therefore, the wound was

made intentionally, it would not come within the meaning of the term '.accidental means.' Consequently the fifth and sixth instructions should have been given to the jury.''

The court then cited approvingly some of the cases we have discussed where it was held that the unexpected result of an intentional act does not constitute accidental means.

Some of the text-writers have announced the rule that accidental means are those which produce effects which are not their natural and probable consequences.

In 4 Cooley's Briefs on the Law of Insurance, page 3156, it is said: ''An effect which is not the natural or probable consequence of the means which produced it, an effect which does not ordinarily follow and cannot be reasonably anticipated from the use of such means, an effect which the actor did not intend to produce and which he cannot be charged with the design of producing, is produced by accidental means.'' This announcement is based on many of the cases I have discussed. There appears to be confusion between cause and result. The alleged rule involves acceptance of the accidental *result* as the equivalent for accidental cause.

A review of the various texts on the subject would be of little value since they are largely mere digests of cases herein discussed.

As above indicated, the rule, that injury or death is produced by accidental means when the result is unusual, unexpected or unforeseen, seems largely to be built upon a misconception of the case of U. S. Mutual Accident Assn. v. Barry, 131 U. S. 100, above discussed. That case clearly lays down the rule contended for by defendant in the case at bar. In discussing ''accidental means'' Mr. Justice BLATCHFORD most correctly said that the jumping off the platform was the *means* causing the injury and that the question submitted to the jury was whether there occurred anything accidental, unforeseen, involuntary or unexpected *in such act of jumping,* that

is, in the means which produced the injury, from the time deceased left the platform until he alighted upon the ground. That which occurred when Dr. Barry alighted upon the ground was clearly the result. It was not enough that the result was unexpected, unforeseen or out of the ordinary. The learned justice then laid down the proposition, which seems to me is decisive of this case and fully sustains defendant's contention here, "that, if a result is such as follows from ordinary means, voluntarily employed, in a not unusual or unexpected way, it cannot be called a result effected by accidental means; but that if, in the act which precedes the injury, something unforeseen, unexpected, unusual occurs which produces the injury, then the injury has resulted through accidental means." Could language be plainer? The words "in a not unusual or unexpected way" plainly modify the verb "employed" and not the preceding verb "follows." If the language could possibly be made plainer it would be by saying that where the means which causes the injury was voluntarily employed in the usual and expected way, the resulting injury is not produced by accidental means even though such resulting injury is entirely unusual, unexpected and unforeseen.

"Means," in the plural form, but in the singular sense and construction, is defined by Webster's new International Dictionary as "that through which, or by the help of which, an end is attained; something tending to an object desired; intermediate agency or measure; necessary condition or co-agent; instrument." In the sense the word "means" is used in the policies in this case, it is equivalent to cause. Defendant insured only against death or injury suffered through accidental means or cause. The burden was upon plaintiff to show an accidental cause of insured's death. Assuming that insured's death was caused by the operation voluntarily undertaken and admittedly performed in a skillful manner, plaintiff must show that something unforeseen, unusual or unexpected and unintended occurred during

the progress of the operation and that this something caused insured's death. It is not enough that there be suspicion, guess, possibility or speculation that something unexpected, unusual or unforseen occurred during the operation. She must prove it as a fact to the satisfaction of the jury, else the policies in suit must be regarded as restricted life and not as accident insurance policies. No duty rested upon defendant to show that insured did *not* die through accidental means. Plaintiff must offer substantial proof that he did die through accidental means and failing to offer such proof, cannot be permitted to recover under insured's accident insurance policies. It is clear beyond cavil that plaintiff offered not the slightest proof that anything unforeseen, unusual or unexpected occurred while the operation was being performed. She has offered only proof tending to show that an unforeseen, unusual and unexpected result followed the performance of an apparently necessary surgical operation undertaken at request of insured and skillfully performed. She is therefore not entitled to recover and the judgment below should be reversed.

The views above outlined are contrary to those announced by the courts of appeals in Young v. Railway Mail Assn., 126 Mo. App. 325; Beile v. Travelers' Protective Assn., 155 Mo. App. 629, and Columbia Paper Stock Co. v. Fidelity & Casualty Co., 104 Mo. App. 157. The suggestion in Eicks v. Fidelity & Casualty Co., recently decided by Division One and reported in 300 Mo. 279, 253 S. W. 1029, which I regard as not matter of actual decision in that case, is also out of harmony with the views I have above outlined. The foregoing cases should be overruled. I think all the other cases from this court and the courts of appeals are clearly distinguishable on their facts.

Defendant also contends that its demurrer to the evidence should have been sustained because the conclusion as a fact that insured died as a result of the

operation for the hernias can only be reached by mounting inference upon inference; that is to say: It must first be inferred that the obstruction of the bowel, conceded to have been the immediate cause of death, was brought about by a thrombus in the mesenteric artery, and then it must be further inferred that the thrombus was caused by the operation. Before the judgment can be affirmed this contention must be resolved against defendant. In the view I have taken and have above outlined at necessary but unusual length, it becomes unnecessary to pass upon this contention and I will not notice it further than to state the presence of the question in the record before us.

*Inference Upon Inference.*

Plaintiff has filed an additional abstract of the record showing the action of the trial court in requiring her to elect as between the first and third counts of the petition upon the one hand or upon the second and fourth counts thereof upon the other and her involuntary election to stand upon the second and fourth counts. Such additional abstract shows that plaintiff's exception was duly saved by sufficient term bill of exceptions. If it be assumed that the trial court erred in requiring such election, we see no way to correct such alleged error upon defendant's appeal. Plaintiff did not appeal from the order requiring her to elect as between such counts. It, therefore, becomes unnecessary to consider defendant's contention, made in its brief, that the trial court properly required such election as between the first and third counts and the second and fourth counts because they set up alleged inconsistent claims.

*Compelled Election.*

For the reasons heretofore stated, the judgment below is reversed and, because of apparent conflict between this opinion and Eicks v. Fidelity & Casualty Co., 300 Mo. 279, decided by Division One, the cause is ordered transferred to Court in Banc. All concur.

PER CURIAM:—The foregoing opinion of DAVID E. BLAIR, J., is adopted as the opinion of Court in Banc. All concur except *James T. Blair, J.,* not sitting, and *Walker J.,* absent.