# OCTOBER, 1939.

IVA P. POPE, RESPONDENT, v. BUSINESS MEN'S ASSURANCE COMPANY OF AMERICA, A CORPORATION, APPELLANT.—131 S. W. (2d) 887.

St. Louis Court of Appeals. Opinion filed Oct. 3, 1939.

*S. C. Rogers* and *Raymond S. Roberts* for plaintiff-respondent.

*Jones, Hocker, Gladney & Grand* and *Solon T. Gilmore* for appellant.

McCULLEN, J.—This is a suit on a policy of accident insurance issued by appellant, hereinafter referred to as defendant, to Dr. Charles H. Pope, the deceased husband of respondent. Respondent will be referred to as plaintiff.

Plaintiff's husband, the insured, was found dead in his automobile on the afternoon of November 3, 1934, and plaintiff brought this suit as beneficiary named in the policy, contending that insured's death was accidental within the meaning of the policy.

There were two trials of the case before different juries, in each of which the jury failed to agree and was discharged. Thereafter, by stipulation of the parties, the jury was waived and the cause was submitted to the court on the evidence adduced at the last jury trial, the stipulation providing that the trial court should make and file findings of fact and declarations of law and render judgment accordingly. Thereafter, the trial court rendered judgment in favor of plaintiff and against defendant in the sum of $1200 to bear interest at the rate of six per cent. per annum from January 11, 1935. After an unavailing motion for a new trial, defendant duly appealed to this court.

The policy of insurance involved herein is for the face amount of $1000, with a ten per cent. increase for two years, maturing for $1200. It insured against death "resulting solely from bodily injuries effected directly and independently of all other causes through accidental means." It is further provided in the policy, under the heading "Additional Provisions," that the insurance does not cover bodily injuries, fatal or otherwise, "caused wholly or partly by bodily or mental infirmity . . . or by any kind of a disease . . ."

The petition of plaintiff alleged the issuance of the policy by defendant, stated its pertinent terms and conditions, and alleged that all premiums had been paid and all conditions required to be performed by the insured had been performed. The petition further alleged, in substance, that the insured met his death on November 3, 1934, a dark rainy evening, while driving his automobile alone and unattended along a wet, muddy, and slippery public road; that the insured, in his efforts to prevent the skidding of his automobile on several occasions on the slippery road, as well as in his efforts to start his automobile after it was stalled, sustained bodily injuries resulting in his immediate death on said date, either by abrasion, or by physical exhaustion, or by mental exhaustion, or from excitement or fear or shock or fright or distress, or a combination of a part or all of the same, which brought about the insured's death either by asphyxiation, or acute heart dilatation, or acute dilation of the heart, or acute heart failure, or ventricular fibrillation; and that plaintiff did not know which, but averred her belief in one or the other of said alternatives; that the death of the insured resulted immediately

and solely from bodily injuries effected directly and independently of all other causes through accidental means.

The answer of defendant, after admitting formal matters, denied each and every other allegation of plaintiff's petition. The answer then alleged that, by the terms of the policy, the accident insurance provided for therein "should not cover death caused wholly or partly by bodily infirmity, and that the death of the said Charles H. Pope was caused wholly or partly by bodily infirmity, to-wit, a disease or ailment of the heart with which the said Charles H. Pope was afflicted at and prior to the time of his death."

Plaintiff's reply to defendant's answer was a general denial.

Defendant assigns as error the trial court's refusal to give defendant's declaration of law No. A, which stated that, under the evidence, plaintiff was not entitled to recover; and that the finding and judgment of the court should be for defendant; the trial court's refusal to give defendant's declaration of law D, which stated that, if Dr. Pope, the insured, was voluntarily operating his car and that his death was caused on account of his voluntarily exerting himself in connection with its operation or his efforts to extricate it from the mud, then the finding and judgment should be for defendant; the trial court's refusal to give defendant's declaration of law E, which stated that, if Dr. Pope, the insured, was voluntarily operating his car, and if his death was caused on account of his voluntarily operating his car or voluntarily exerting himself, the finding and judgment should be for defendant. Defendant further contends that the declaration of law No. 3 given by the trial court on behalf of plaintiff was erroneous because it confused the cause with the result and authorized a recovery by plaintiff when the result was unforeseen or unexpected, whereas the policy required that the cause, i. e., the means of the event, must be accidental. Defendant further argues and contends that the death of the insured was caused wholly or partly by bodily infirmity, a disease or ailment of the heart with which the insured was afflicted at or prior to the time of his death, and is therefore excluded by the policy; that the finding of the trial court is based on mere guess or speculation; that the medical opinions of plaintiff's witnesses are not based on justifiable facts but are based on mere surmise or speculation.

Plaintiff contends that the acts and experiences of Dr. Pope causing his death were not voluntary and intentional; that his death resulted from an attempt to extricate himself from a hazardous position which he unwittingly entered; and that his death was caused by external violent and accidental means, within the provisions of the policy, as such provisions in policies of insurance are construed by the courts.

The evidence shows that the insured was a physician, fifty-eight years of age; that he was a hale, hearty, well-muscled, active, emo-

tional and temperamental man, five feet, eight and one-half inches in height, weighing approximately one hundred and seventy-five pounds at the time of his death on November 3, 1934; that he practiced his profession as a medical doctor in the City of St. Louis, and had a country home at Ironton, Missouri, to which he was going at the time he died; that his chief business was medical examinations for insurance companies; that he traveled throughout the City of St. Louis and nearby territory, carrying with him scales weighing about thirty pounds, and a small satchel which, with other paraphernalia, also weighed about thirty pounds; that he was busy from early morning frequently until ten or eleven o'clock at night; that he was in an accident in May, 1933, in which his automobile skidded and turned over three times, causing injury to his right shoulder but that he lost no time from his business, having had someone else drive his car for him at that time; that about two o'clock in the afternoon of November 3, 1934, the insured was seen in the City of St. Louis by Charles L. Heberle, who knew him well but noted no change in his physical appearance; that November 3, 1934, was a wet and rainy day; that on that day the insured was driving from St. Louis to his country home in Ironton; that at Bismarck, Missouri, there were two roads to Ironton, one called the "old road" and the other a new and shorter road which was then under construction; that upon the insured's arrival at Bismarck, he inquired as to the condition of the new road and was told that it was very muddy and that he had better take the old road.

About seven o'clock of that evening, the insured's automobile was found upon the new road, about a mile from Bismarck, standing almost directly across the middle of the road. This discovery was made by Carlton Bell, who was driving over the new road from Bismarck to Ironton when he came upon insured's car. Bell got out of his own car and went to the car of the insured and found insured seated behind the steering wheel of his automobile, with his hands on the wheel. The ignition was off and the brakes were set. The insured was then dead. Bell pushed the insured's body to the right side of the car, got into the driver's seat, backed the insured's automobile off to the side of the road and then telephoned to Bismarck for assistance. The evidence shows that after the insured left Bismarck in his automobile he had great difficulty in operating his car over the wet muddy road.

J. G. Goeltz, then Postmaster at Bismarck (since deceased), testified that the insured was stuck on the road about five to eight minutes; that "he seemed to have a terrible time, and I watched him until he got out and I was wondering why he didn't go back to town and get somebody to pull him out." J. G. Goeltz further testified that the insured finally got started with his automobile and zigzagged down the road eight hundred feet when his car got stuck again; that the

car was going back and forth and looked like it would get around every way; that it was getting dark and the witness finally went about doing his work; that when he looked again, the insured was gone.

Gus Staffen, a farmer living a short distance from the road and about half a mile south of Bismarck, testified that he saw the insured's car moving down the road where "it stuck up." This witness had not seen the first stalling of the automobile described by witness Goeltz, but testified that he observed the automobile had become stalled or mired in the mud on three occasions; that on each of these occasions the insured got out of the car, and in one or two instances walked across the road and got something which he placed under the wheels of the automobile. Shortly after the insured's automobile became stalled the last time, the witness, having duties to perform elsewhere on his farm, saw no more of the insured. In connection with the stalling of the automobile the witness testified, referring to the insured: "He got out of that and went on and got to the next place. There he stuck up good and proper. I could see him from where I was the last time he got stuck. He was there about two hours." The witness testified that he did not watch the insured all the time, but watched him for about an hour; that he could hear the motor of the automobile from where he was; that it was not running constantly, "it was just running awhile, and then it seemed like he stopped the motor and would try to do something, and it would quit awhile and then start up again." The witness further said that he could hear the motor; that it would die down, start up again, and then die down; that he heard that several times and finally all was quiet; that the road had been open off and on for quite a while; that there were no signs along the road; that the witness himself had been along the road that day; that the road was bad at that place and the insured's car was kind of zigzagging before he got to that bad place.

Carlton Bell, who discovered the dead body of the insured in the insured's automobile, testified that in driving on the road, he (Bell) was using his clutch, brake and foot accelerator and steering wheel continually from the time he got on the road until he got to the point where he found insured and the insured's automobile. He testified that the insured was "sitting up at the steering wheel with both hands on the steering wheel. His hat was on, and his glasses, and his hat was inclined to be a little on the back of his head, and his head was tilted back towards the cushion;" that, after a truck had come along and had passed by, the witness tried to drive his own car past the insured's car, and when he did so, the witness' car began slipping toward the ditch and finally got parallel with the insured's car; that, when the witness tried to head his car back towards Bismarck, his car slipped entirely off the road.

Ferd W. Goeltz (son of witness J. G. Goeltz), a constable of Iron Township living at Bismarck, being called by Carlton Bell, took a wrecking crew from Bismarck to the place where the insured was found dead in his car. The witness had the insured's car removed from the ditch and then drove it into town where he summoned a doctor. This witness testified that the road between that point and Bismarck was in a very bad condition, very muddy; that it had rained that day and also had rained that night; that it was about 8:00 P. M. when he removed the insured's car. Describing the condition of the insured's car, the witness testified that, "the front floor mat was very muddy. The running board on the left side was covered with mud. I examined the doctor's shoes and his shoes were covered with mud well over the shoe tops. At the right of the car on the floor was a pair of muddy kid gloves." The witness further testified that when he arrived at the scene, the insured's body was slumped toward the right side of the car; that there were footprints around the middle of the road where the car had been found before he backed it to the side of the road; that there were two old fence rails in the center of the road.

The evidence shows that there were some provisions in the back of the insured's car, some clothing, a small pair of scales, some groceries, a blanket or two, and some charcoal. Mr. Goeltz, who drove the insured's car into Bismarck, delivered the body of the insured to the undertaker there between eight and nine o'clock that night. The undertaker started to embalm the body between one and two o'clock the next morning, Sunday. On Sunday morning an inquest was held and the body of the insured was later sent to St. Louis. The evidence shows that the undertaker, in withdrawing the blood from the body of the insured, made an incision under the right arm and did not get the proper drainage and used a trocar for drainage in the heart cavity.

Claude J. Hill, the undertaker, testified that he found some abrasions on one leg above the ankle of the insured, and that there was a little imprint across the forehead.

Dr. R. B. H. Gradwohl testified on behalf of plaintiff that he performed an autopsy on the insured's body on November 7, 1934, in the presence of Dr. Downey L. Harris who testified for defendant. Dr. Gradwohl said that he carefully examined all the organs of the insured, particularly the heart, to ascertain the cause of death, but was unable to do so at that time and would not venture an opinion as to the cause of death without a previous history; that in his opinion the insured was a normal man for his age; that there was no clot in the coronary artery of the insured; that a clot in the coronary artery is what is called an embolus; that in cases of arteriosclerosis they are extreme enough to cause death and were more profound changes than the insured had; that the most common change is a block of the

artery, or a degeneration of the heart muscle, or apoplexy in the brain; that he found none of these in the insured. Referring to the report of the autopsy which he made, the witness said he found in the insured a chronic degeneration of his arterial system, particularly of the coronary artery in patches, some in the sorticvalve, none in the vessels at the base of the brain, but some in the vessels of the kidneys; that the insured had some degree of chronic arterial degeneration; that he found nothing else acute, but that he did not make any conclusion at the time of the autopsy as to the cause of death; that he simply narrated his anatomical diagnosis, which is the custom when an examination of that kind is made.

Dr. Downey L. Harris testified for defendant that in his opinion the insured was not a normal man for his age; that the insured had a very serious disease of the blood vessels; that in his opinion the insured's death was caused by heart disease, a failure of the heart.

Dr. Clyde C. Winters, a witness for plaintiff, testified, in answer to a question embodying a statement of the activities of Dr. Pope, the insured, that in his opinion such activities would indicate that the insured did not have any serious affliction.

The abstract contains many pages of testimony given by medical experts on both sides, but we deem it unnecessary to review such testimony here. It is sufficient for the purposes of this case to say that the medical experts who testified in behalf of plaintiff, in response to hypothetical questions, stated that in their opinion the zigzagging, skidding and stalling of the insured's car, together with his efforts to guide it and get out of the stalled places on the muddy road brought about a condition of the insured which caused a sudden or acute dilatation of his heart and caused his death; that, except for such experience, he would not have died; that overexertion, unusual exertion, fear, shock, anxiety, emotionalism and mental condition were factors and any of them could cause dilatation of the heart and cause death; that the insured might overexert himself and die; that in steering the car on the muddy road, he could overexert himself and die; that a fear that he might bump into a hole farther on down the road might cause him to die; that it depended on the individual and that was especially true of an individual who was more or less excitable.

Counsel for defendant have presented in their brief a long list of cases beginning with Caldwell v. Travelers Ins. Co., 305 Mo. 619, 267 S. W. 907, followed by cases of the Courts of Appeals of this State, and cases from the courts of various states throughout the nation, in support of defendant's contention that the death of Dr. Pope was due to voluntary and intentional acts on his part; that his death was not effected through "accidental means" within the meaning of the policy involved herein and plaintiff is therefore not entitled to recover at all.

On the other hand, counsel for plaintiff also have cited a long list of cases, including the Caldwell case, supra, and the case of United States Mutual Acc. Ass'n. v. Barry, 131 U. S. 100, 33 L. Ed. 60, 9 Sup. Ct. Rep. 755, as well as a number of cases of our Missouri courts and a large number of cases decided by the courts of numerous states, in support of plaintiff's contention that the acts and experiences of Dr. Pope causing his death were not voluntary and intentional; that his death resulted from an attempt to extricate himself from a hazardous position which he unwittingly entered; and that his death was therefore caused by external violent and accidental means within the meaning of the policy.

It would serve no useful purpose whatsoever for us to undertake an analysis or review of the cases cited by the parties herein. The books literally teem with lengthy opinions of courts containing extended discussions of the law on this subject as applied to a multitudinous variety of facts. Indeed, so much has been written that we feel we can best serve the public and the litigants herein, as well as the bench and bar, by refraining from any attempt to add to the overwhelming mass of legal discussion already in print on this subject. There is nothing we could say that has not been well and clearly said by many courts. Furthermore, our Supreme Court, in the Caldwell case, supra, has definitely and authoritatively settled the question involved in the case now before us.

We are of the opinion that the facts in evidence in this case bring it clearly within the doctrine of the Caldwell case. That case was one in which the policy insured against an injury or death "from bodily injuries effected directly and independently of all other causes through external violent and accidental means." It will be noted that the language of the policy in the case at bar is practically the same as that above quoted from the policy in the Caldwell case. In that case the insured died from accidental thrombosis and intestinal obstruction following an operation for abdominal hernia as a result of necessary lacerations which occurred in the course of the operation. The Supreme Court in banc, in an opinion by the then presiding Judge David E. Blair, made an exhaustive and painstaking review and analysis of the decisions of the courts of the country, both federal and state, pointed out that there were two lines of decisions as to the meaning of "accidental means" in a policy of insurance, and deliberately chose to adhere to that line of cases or decisions holding that, where an unusual or unexpected result occurs by reason of the doing by the insured of an intentional act, and no mischance, slip or mishap occurs in the doing of the act itself, the ensuing injury or death is not caused through "accidental means." The decisions approved by our Supreme Court in the Caldwell case, as well as that case itself, all further hold that, in order to bring a case within the meaning of a policy such as we have in the case at bar, where

the policy insured against death through "accidental means," it must appear that the *means* used were accidental and it is not enough to warrant recovery that the *result* may be unusual, unexpected or unforeseen. The Supreme Court pointed out that there was a second line of decisions in the country holding that, where the injury or death is the unusual, unexpected or unforeseen *result* of an intentional act, such injury or death is by accidental means even though there is no proof of mishap, mischance, slip, or anything out of the ordinary in the act or event which caused such injury or death, but the court definitely and clearly refused to follow such second line of decisions. To put the matter beyond all possibility of doubt, the Court specifically overruled Young v. Railway Mail Ass'n., 126 Mo. App. 325, 103 S. W. 557; Beile v. Travelers Protective Ass'n., 155 Mo. App. 629, 135 S. W. 497; Columbia Paper Stock Co. v. Fidelity & Cas. Co., 104 Mo. App. 157, 78 S. W. 320; and Eicks v. Fidelity & Cas. Co., 300 Mo. 279, 253 S. W. 1029, prior Missouri cases which had followed the second line of decisions. [See Caldwell v. Travelers Ins. Co., 305 Mo. 619, 661, 267 S. W. 907, 921.]

After completing its review of the cases as well as the works of text writers on the subject, the Court in its opinion in the Caldwell case pointed out that there appeared to be confusion in the decisions of the courts between *cause* and *result*. The Court declared that the rule, which had been followed in the second line of decisions referred to, that injury or death is produced by "accidental means" when the result is unusual, unexpected or unforeseen, was based upon a misconception of the case of United States Mutual Acc. Assn. v. Barry, 131 U. S. 100, 9 Sup. Ct. 755, 33 L. Ed. 60. After giving a definition of the word "means," taken from Webster's New International Dictionary, as "that through which, or by the help of which, an end is attained; something tending to an objection desired; immediate agency or measure; necessary condition or coagent; instrument," the court in its opinion said:

"In the sense the word 'means' is used in the policies in this case it is equivalent to cause. . . . The burden was upon plaintiff to show an accidental cause of insured's death. Assuming that insured's death was caused by the operation voluntarily undertaken and admittedly performed in a skillful manner, plaintiff must show that something unforeseen, unusual, or unexpected and unintended occurred during the progress of the operation and that this something caused insured's death. It is not enough that there be suspicion, guess, possibility, or speculation that something unexpected, unusual, or unforeseen occurred during the operation. . . . No duty rested upon defendant to show that insured did not die through accidental means. Plaintiff must offer substantial proof that he did die through accidental means, and, failing to offer such proof, cannot be permitted to recover under insured's accident insurance policy. It is clear be-

yond cavil that plaintiff offered not the slightest proof that anything unforeseen, unusual, or unexpected occurred while the operation was being performed. She has offered only proof tending to show that an unforseen, unusual and unexpected result followed the performance of an apparently necessary·surgical operation undertaken at request of insured and skillfully performed. She is therefore not entitled to recover, and the judgment below should be reversed.'' [Caldwell v. Travelers Ins. Co.,·305 Mo. 619, 660, 267 S. W. 907, 921. See also Zach v. Fidelity & Cas. Co. (Mo. App.), 272 S. W. 995; Atherton v. Railway Mail Assn. (Mo. App.), 221 S. W. 752.]

See particularly the cases of Pope v. Lincoln Natl. Life Ins. Co. and Pope v. Columbian Natl. Life Ins. Co., 103 Fed. (2d) 265 (C. C. A. 8th Cir.), in·which it was held that this same plaintiff herein ·was not entitled to recover for the death of the same insured on policies similar to the one involved in the case at bar.

In the case at bar plaintiff's contention, that the insured's death was the result of a bodily injury ·effected through accidental means because his death resulted from fear or excitement on his part arising from the skidding of his automobile on the muddy road is not supported by any evidence. There is no evidence to show that the insured suffered fear or excitement to such an extent as to cause his heart· to stop beating. It· will be remembered that his body was found peacefully seated in the automobile which he had been operating, with the brakes on and the ignition turned off. There was nothing whatsoever to show, or from which it could be reasonably inferred, that any force of any kind had been applied in such a way as to cause *bodily injury* as required under the terms of the policy to authorize recovery. It is not even contended·that the slight abrasions on the body had any part in causing the insured's death. There was nothing about the automobile or about the condition of the insured's body to show the application of any force whatsoever to cause his death. There was no evidence to. show that any slip, mishap, or mischance occurred during the insured's intentional and voluntary activities in operating his car or in striving to get it out of the mud. It must be remembered that the policy sued·on·required proof of loss ''resulting solely from bodily injuries effected directly and *independently of all other causes through accidental means.''* . (Italics ours.)'

. Even if it should. be assumed for the purpose of argument that fear or excitement, which are clearly mental attributes, could be ·said to constitute bodily injury, that would still not be proof that the death occurred through ''accidental means.'' If, by indulging in surmise, we should conclude that the insured was suffering from excitement or fear, such a conclusion could not change the view which we must take under the doctrine of the Caldwell case, because whatever fear or excitement he suffered resulted from his own intentional, voluntary acts in operating his automobile ·over a road which he

knew was muddy and wet, and which he had been warned not to take.

The testimony of James Edmonds, the service station man at Bismarck, Missouri, was to the effect that the insured asked him the condition of the road to Ironton. The witness stated that he told the insured to take the old road, saying, in answer to a question: "Yes, I told him he had better stay off of the new grade." And further, on cross-examination, the witness said:

"Q. Now you say you told him he had better not take the new road? A. Yes, sir.

"Q. You didn't tell him any reason, did you? A. I don't recall whether I did or not."

The means which the insured used to drive his car over the muddy road and to extricate it from the mud were not accidental means; they were intentional and voluntary. Whatever acts he did in that connection were not unintentional, unexpected or unforeseen. Hence, those acts were not accidental. Those acts were done with a deliberate purpose, intentionally. The insured, of course, saw and knew when he started upon the new road that it was muddy and when he got stuck and alighted to extricate the car from the mud, he did so intentionally and voluntarily, not accidentally. He himself chose to do those things. Things done by deliberate choice intentionally cannot be said to be accidentally done. It is true the *result*, namely, the insured's death, undoubtedly was unforeseen and unexpected, but the *means* employed were not unforeseen or unexpected or accidental. The policy herein did not insure against mere accident or an accidental result. It specifically insured only against loss resulting through "accidental means."

The trial court, in refusing to give the declarations of law requested by defendant and in giving the declaration of law No. 3 requested by plaintiff, failed to distinguish between "means" and "result." In the declaration of law No. 3 requested by plaintiff, the court declared that "accidental means" meant "any event happening which under the circumstances is unintended, involuntary or unexpected to the person to whom it happened; the happening of an event without the concurrence of the will or design of the person by whose agency it was caused." That declaration of law is clearly in conflict with the rule laid down by our Supreme Court in the Caldwell case, *supra*. The trial court should have given defendant's requested declaration No. A holding that as a matter of law plaintiff was not entitled to recover under the evidence, and the finding and judgment should have been for defendant.

The conclusion which we have reached on this point makes it unnecessary for us to discuss the other points raised by defendant.

Under the authority of the Caldwell case, *supra*, it is our plain duty to reverse the judgment of the trial court. It is so ordered. *Hostetter, P. J.*, and *Becker, J.*, concur.