## WILSON v. BUSINESS MEN'S ASSUR. CO. OF AMERICA.

### No. 12284.

United States Court of Appeals,
Ninth Circuit.

March 28, 1950.

B. W. Davis, Pocatello, Idaho, for appellant.

A. L. Merrill, R. D. Merrill and W. F. Merrill, Pocatello, Idaho, for appellee.

Before HEALY, BONE and POPE, Circuit Judges.

POPE, Circuit Judge.

This is a case parallel to that of New York Life Insurance Company v. Wilson, 178 F.2d 534, 535, decided by this court November 21, 1949. In each case Cecelia J. Wilson sued as beneficiary under an insurance policy. Both cases were tried at the same time, the testimony taken in this case, with respect to the manner of death of the insured, Harry H. Wilson, being by stipulation made a part of the record in the New York Life case. In each case the action arose out of the death of Harry H. Wilson. While the policy in the New York Life case was a life insurance policy with provision for double indemnity in case of accidental death as therein defined, here the policy was simply an accident policy providing, among other benefits, indemnity in a stated amount for loss of life "resulting directly and independently of all other causes from bodily injuries * * * effected solely through accidental means, subject to the provisions, conditions and limitations" contained in the policy.

Since in each case the action was based upon a claim of death by accidental means, and since the evidence respecting the cause of death was the same in each case, it is unnecessary here to recount the circumstances of the insured's death otherwise than by referring to the opinion in the New York Life case, supra.

In that case we held that the trial court correctly decided that the death of the insured which resulted from an embolism which was brought about by the "extraordinarily violent coughing, choking and snoring of the insured resulting unforeseeably from the routine administration of opiates and sedatives incident to the operation", was one caused by accidental means within the meaning of the policy. The majority of the court also held that the insurance company had not sustained the burden of showing, as a defense, that death resulted "from infirmity of mind or body" or "from illness or disease," within the meaning of the exclusion clause.

In this case the trial court reached a different result based upon its finding that the Business Men's Assurance Company policy contained an excepting or exclusionary clause not found in the other policy, and which provided that there was excepted from the policy "all bodily injuries, fatal or otherwise" which were "caused wholly or partly, or the results of which are contributed to by bodily or mental infirmity, hernia * * * or any * * * medical or surgical treatment therefor. Such hernia * * * medical or surgical treatment to be construed as sickness." The court found that the "opiates and sedatives were administered as medical treatment" following the hernia operation, that their administration was "a reasonable and ordinary procedure to be followed", and that they "caused the violent coughing, choking and snoring" which "unexpectedly and accidentally caused the death".

The court concluded that these facts placed the cause of death squarely within the language of the quoted excepting clause, and therefore that the plaintiff could not recover.

Appellant argues that at best the portion of the policy quoted above is ambiguous, that since it was found by the court that the untoward results of the sedatives were accidental, the recital of the policy that the results of medical or surgical treatment for hernia should be "construed as sickness", amounts to saying that that which is not sickness shall be deemed sickness. Appellant also points to a provision relating to non-fatal accidental injuries, providing benefits of $200 for surgical expense for "cutting into abdominal cavity for diagnosis or treatment of organs therein". He says this language is broad enough to cover an ordinary hernia operation, and further shows an ambiguity in the policy. Such ambiguity, appellant says, requires a resolution of the ambiguity in favor of liability, under the Idaho rule

that insurance policies should be construed most strongly in favor of the insured. Rauert v. Loyal Protective Ins. Co., 61 Idaho 677, 106 P.2d 1015; O'Neil v. New York Life Ins. Co., 65 Idaho 722, 152 P. 2d 707.

██ Appellee says that the judgment should be affirmed, not only for the reasons stated by the trial court, but for additional reasons. It says that the policy provided that it should become effective at noon on the date thereof, and since it was dated and signed at Kansas City, Missouri, it became a contract in that state, and is governed by its law. Appellee then cites Missouri decisions, which, unlike those of Idaho, make a distinction in cases of this sort between "accidental means" and "accidental results",[1] and says that under those decisions it would be held that since the operation was attended by no mishap or mischance, and since the treatment was the standard and usual one, the results, though unusual, unexpected and unforeseen were not caused by "accidental means." We think, however, the court was right in holding the law of Idaho controlling. While the policy did provide that injuries sustained "prior to twelve o'clock noon * * * on the date hereof" were excluded, it did not make the policy effective at that time. Rather, it incorporated the application which required the insured, after receiving the policy, then to examine it "and if satisfactory accept it, and if not return it". As insured was a resident of Idaho, and presumably examined and accepted the policy there, it was clearly an Idaho contract. Ruhlin v. New York Life Ins. Co., 3 Cir., 106 F.2d 921; Mutual Life Ins. Co. v. Johnson, 293 U.S. 335, 55 S.Ct. 154, 79 L.Ed. 398.

██ But in our opinion the conclusions and judgment of the District Court require no support other than the findings as made.[2] They are plainly supported by the evidence, and in our view the language of the policy upon which the court relied is plain and unambiguous. In words which cannot be read otherwise it says that death resulting from hernia, or from "medical or surgical treatment therefor", is not within the protection of the policy. We know no reason why the insurance company may not thus stipulate if it choose to do so, and the insured accept the policy in this form.

Appellant urges that to treat as wholly wanting in ambiguity the policy provisions that the results of the medical or surgical treatment for hernia are "to be construed as sickness" is to give the word "sickness" an unnatural and absurd meaning. But we think appellant overlooks the fact that the policy provides that it covers "all bodily injuries * * * except:" etc. (Emphasis supplied). It is after this word "except" that hernia, and other named disabilities, and the medical and surgical treatment therefor, are listed. The intent to except what here happened to this insured is, in our opinion, thus made too clear for doubt.[3]

The judgment is affirmed.

1. In Pope v. Business Men's Assur. Co. of America, 235 Mo.App. 263, 131 S.W.2d 887, 892, the court said of Caldwell v. Travelers' Ins. Co., 305 Mo. 619, 267 S.W. 907, 39 A.L.R. 56: "The Supreme Court in banc, in an opinion by the then presiding Judge David E. Blair, made an exhaustive and painstaking review and analysis of the decisions of the courts of the country, both federal and state, pointed out that there were two lines of decisions as to the meaning of 'accidental means' in a policy of insurance, and deliberately chose to adhere to that line of cases or decisions holding that, where an unusual or unexpected result occurs by reason of the doing by the insured of an intentional act, and no mischance, slip or mishap occurs in the doing of the act itself, the ensuing injury or death is not caused through 'accidental means.' "

2. Appellee also asserts a further difference between this policy and that in the New York Life case, supra, in that here the policy excepts, not merely death which "resulted" from infirmity of mind or body, but results "which are contributed to" by bodily or mental infirmity. For the reasons stated we consider it unnecessary to determine whether the words here emphasized require a result different from that in the New York Life case.

3. The trial judge, in his able opinion, found the use of the word "sickness" strange. He said: "Regardless of how foolish it is to say that such an accident

HEALY, Circuit Judge (dissenting).

The pertinent language of the provision said to relieve the insurer of liability reads: "The Accident insurance under this policy covers all bodily injuries, fatal or otherwise, subject to the provisions, conditions and limitations specified in this policy, except: * * * (5) those caused wholly or partly, or the results of which are contributed to, by * * * hernia * * * or by any disease, or medical or surgical treatment therefor, such hernia * * * or medical or surgical treatment to be construed as sickness."

Nobody, of course, claims that the hernia caused the insured's death. The contention of the insurance company, predicated on the testimony of several physicians, was that the operation caused it. These experts gave it as their opinion that the embolism of which the insured died was post-operative in character, that is to say, it was the result of a clot in the blood stream developing out of the operation itself. But the trial court, as we pointed out in the companion case, New York Life Ins. Co. v. Wilson, 9 Cir., 178 F.2d 534, rejected this testimony and accepted instead the medical opinion of the plaintiff's witnesses that the embolus was not connected with the surgery.[1] Accordingly, the hernia and the surgical treatment for its correction are both ruled out as causes of death.

There remains only "medical treatment" for the hernia as a possible culprit to absolve the insurer of liability. The trial court found that the opiates and sedatives were "administered as medical treatment," and on that basis alone thought the insurer not liable. It did not find that the drugs were administered as medical treatment *for the hernia.* Assuming, however, that such was necessarily what the court meant, that being the language of the exception, I am not able to discover in the record any evidence to support such a finding. One does not, I think, ordinarily assimilate the administration of sedatives or opiates in these circumstances with medical treatment for the cure or correction of a bodily infirmity such as hernia; and it is the latter thought only that a reading of the excluding clause suggests to the lay mind. The difficulty here is that the language of the exceptive provision must necessarily be given broad scope—stretched, so to speak, beyond its ordinary sense—if it is to be made to reach this particular aspect of the case, whereas observance of the governing state decisions requires that exceptive provisions be narrowly construed against the insurer. My brothers have paid mere lip service to this well-recognized decisional rule, while failing entirely to apply it.

The indemnities provided by this insurance policy are by no means limited to the accidental loss of life. They cover a wide range of injuries and disabilities short of those which are fatal. Income benefits are provided for total and partial loss of time. There are provisions for additional income during hospital confinement, and for surgical attendance benefits. And the policy contains a schedule covering payments to be made by the company for the cost of various operations. If this suit had been one to recover indemnity for loss of time, or for hospitalization, or surgery or medical attendance benefits, the exceptive pro-

is sickness, that is the wording of the policy". We think it apparent that what the company undertook to do was to provide against liability in such cases in states like Idaho which hold that there is no distinction between "accidental means" and "accidental results". See Rauert v. Loyal Protective Ins. Co., supra, and O'Neil v. New York Life Ins. Co., supra. The use of such phraseology as was here used was suggested by the writer of the note on this subject in 166 A.L.R. 469, as follows: "On the other hand, if the courts refused to draw the

distinction, the insurer would still have a choice as to the risks it would cover or exclude; if there are accidents the insurer does not wish to cover, it need but name them specifically or even generically, according to type. All that the insurer need do in such case is to phrase the exclusion in language which would clearly inform the insured as to what types of accidents are not within the coverage of the policy."

[1]. The specific finding was that the insured "did not suffer any shock and did not die as a result of said hernia operation."

visions in question might well have relevancy and actually fit the case. But once an attempt is made to apply the exceptions to the actual facts of the suit, as found by the court, the language employed assumes a degree of vagueness and ambiguity that baffles the understanding. Ambiguities of this nature are universally resolved against the insurer as being the party solely responsible for them.

The judgment in my opinion should be reversed.